William J. Honan
Michael J. Frevola
Francesca Morris
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York  10007-3189
(212) 513-3200
E-mail:  william.honan@hklaw.com
        michael.frevola@hklaw.com
        francesca.morris@hklaw.com

ATTORNEYS FOR DEFENDANT
ZAREPTA CHEMICAL KS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                        :
STOLTHAVEN HOUSTON, INC.,                               :
                                                        :
                        Plaintiff,                      :
                                                        :
            v.                                          :
                                                        :   08 Civ. 4327 (RPP)
RACHEL B, its engines, tackle apparel, etc., *in rem*,  :
and HILTVEIT ASSOCIATES, INC. and                       :
ZAREPTA CHEMICAL KS, *in personam*,                     :
                                                        :
                        Defendant.                      :
                                                        :
------------------------------------------------------------------------x


**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
TO VACATE THIS COURT'S MARITIME ATTACHMENT ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ............................................................................................................................ 3

POINT I
PLAINTIFF DOES NOT HAVE A VALID *PRIMA FACIE* ADMIRALTY CLAIM ............ 5

POINT II
PLAINTIFF'S ATTACHMENT OF ZAREPTA'S FUNDS WAS EITHER WRONGFUL
OR CONSTITUTES AN ABUSE OF PROCESS .................................................................. 8

    A.    WRONGFUL ATTACHMENT ............................................................................. 10

    B.    ABUSE OF PROCESS ........................................................................................ 10

POINT III
THE ATTACHED FUNDS ARE UNRELATED TO THIS ACTION ................................ 12

CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.*,
  384 F. Supp. 2d 726 (S.D.N.Y. 2005), *vacated on other grounds*,
  460 F.3d 434 (2d Cir. 2006).................................................................................3

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
  460 F.3d 434 (2d Cir. 2006).............................................................................3, 8, 9

*Cary Marine v. MV Papillon*,
  872 F.2d 751 (6th Cir. 1989) .............................................................................6

*Coastal Barge Corp. v. M/V Maritime Property*,
  901 F. Supp. 325 (M.D. Fla. 1994).....................................................................10

*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*,
  341 F.2d 50 (2d Cir. 1965).................................................................................9

*Dolco Investment, Ltd. v. Moonriver Development, Ltd.*,
  486 F. Supp. 2d 261 (S.D.N.Y. 2007)................................................................5

*Everett v. United States*,
  284 F. 203 (9th Cir. 1922))................................................................................7

*Fesco Ocean Management, Ltd. v. High Seas Shipping Ltd.*,
  No. 06 Civ. 1055, 2007 WL 766115 (S.D.N.Y. Mar. 12, 2007) .....................4

*Forrester v. Ocean Marine Indemnity Co.*,
  11 F.3d 1213 (5th Cir. 1993) ..............................................................................7

*Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*,
  476 F. Supp. 119 (S.D.N.Y. 1979) ....................................................................9

*Maritrend, Inc. v. M/V Sebes*,
  No. 96-3140, 1997 U.S. Dist. LEXIS 23594 (E.D. La. 1997)........................7

*OGI Oceangate Trans. Co. v. RP Logistics Pvt. Ltd.*,
  No. 06 Civ. 9441, 2007 WL 1834711 (S.D.N.Y. June 26, 2007)..............3, 4

*P.R. Ports Authority v. Barge KATY-B*,
  427 F.3d 93 (1st Cir. 2005)................................................................................4

*Reed v. Steamship Yaka*,
  373 U.S. 410, 83 S. Ct. 1349, 10 L. Ed. 2d 448 (1963)..................................7

*Sampson Madeja v. Olympic Packers, LLC*,
   310 F.3d 628 (9th Cir. 2002) ............................................................................6, 7

*Sonito Shipping Co. v. Sun United Maritime Ltd.*,
   478 F. Supp. 2d 532 (S.D.N.Y. 2007) ..................................................................5

*T&O Shipping, Ltd. v. Lydia Maritime Shipping Co.*,
   415 F. Supp. 2d 310 (S.D.N.Y. 2006) ..................................................................5

*Tide Line, Inc. v. Eastrade Commodities, Inc.*,
   No. 06 Civ. 1979, 2006 WL. 4459297 (S.D.N.Y. Aug. 15, 2006) .......................5

*United States v. 4492 S. Livonia Road*,
   889 F.2d 1258 (2d Cir. 1989) ................................................................................4

*Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*,
   519 F. Supp. 2d 399 (S.D.N.Y. 2007) ..................................................................4

## STATE CASES

*Board of Education of Farmingdale Union Free Sch. District v. Farmingdale
Classroom Teachers Association Inc.*,
   38 N.Y.2d 297, 380 N.Y.S.2d 635 (N.Y. 1975) .................................................11

*Piep v. Baron*,
   506 N.Y.S.2d 838 (N.Y. Civ. Crt. 1986) ............................................................11

## FEDERAL STATUTES

Federal Rules of Civil Procedure,
Supplemental Rules for Certain Admiralty or Maritime Claims, Rule B .............1, 3, 5, 8

Federal Rules of Civil Procedure,
Supplemental Rules for Certain Admiralty or Maritime Claims, Rule E .............1, 3, 4

## TREATISES

Mark Davis, *Bareboat Charters* 54 (2d ed. 2005) ......................................................6

Schoenbaum, *Admiralty & Maritime Law* 382 (1987) ................................................6

## PRELIMINARY STATEMENT

This motion to vacate the Court's *Ex Parte* Order for Process of Maritime Attachment, dated May 7, 2008 (the "Attachment Order"), obtained by Plaintiff Stolthaven Houston Inc. ("Stolthaven" or "Plaintiff"), is brought by Defendant Zarepta Chemical KS ("Zarepta" or "Defendant") and raises the following issues:

(1) To sustain its maritime attachment, Plaintiff Stolthaven has the burden of proving that it has a valid *prima facie* admiralty claim under the heightened particularity pleading standards of Supplemental Rule E(2)(a). Stolthaven's allegations, made "upon information and belief" raise no cause of action against Zarepta and any claim against Zarepta would fail as a matter of well settled admiralty law. Should the Court maintain Stolthaven's Attachment Order against Zarepta?

(2) A plaintiff cannot obtain process through misrepresentation of facts or use such process to improperly obtain a collateral objective. Stolthaven's complaint fails to advise that Zarepta was unconnected to the transaction at issue and Stolthaven continues to maintain its attachment of Zarepta's funds after being advised of these facts. Should the Court maintain Stolthaven's Attachment Order against Zarepta?

(3) Rule B allows the attachment of the defendant's tangible and intangible property within the district. Defendant Hiltveit Associates Inc. has no property interest in Zarepta's attached funds and Stolthaven has no claims as a matter of law against Zarepta. Should the Court maintain Stolthaven's Attachment Order against Zarepta?

Defendant respectfully suggest that the answer to each of the foregoing questions is "no," and that the Court should grant Defendant's motion to vacate the Attachment Order.

## STATEMENT OF FACTS

On May 25, 2004, Zarepta, as owner, entered into a bareboat charter party with Norfolk LP believed to have a place of business at 150 Motor Parkway, Hauppauge, NY 11788 through Norfolk's apparent General Partner Hiltveit Associates, Inc. ("Hiltveit"), for the charter of the vessel "MV Rachel B" (the "Vessel"). A true and correct copy of the Bareboat Charter is attached to the Declaration of Morten Werring, the Chairman of Zarepta, duly sworn to on June 11, 2008 ("Werring Declaration") as Exhibit A.

According to Rider paragraph 34 to the Bareboat Charter, the charter for the Vessel was for:

> an initial period of eight years (the "Initial Period") commencing on the Delivery Date and ending on the 8th anniversary thereof.

(Ex. A to Werring Declaration, Rider ¶ 34(b)(i)). The Vessel was delivered on May 28, 2004, and was operating under the Bareboat Charter when the events alleged in the Complaint took place. (Werring Declaration ¶ 4).

Clause 9(b) of the Bareboat Charter states, in relevant part:

> The Charterers shall at their own expense and by their own procurement man, victual, navigate, operate, supply, fuel and repair the vessel whenever required during the charter period and they shall pay all charges and expenses of every kind and nature whatsoever incidental to their use and operation of the vessel under this Charter, …

(Ex. A to Werring Declaration, Bareboat Charter ¶ 9(b)).

Zarepta was not involved in the operation of the Vessel at the time of the events alleged in the Complaint because at the time of those events the Vessel was being operated by Norfolk under the Bareboat Charter. (See Werring Declaration ¶ 5). Zarepta takes no position regarding

2

Stolthaven's alleged wharfage claim against the Vessel or the Bareboat Charterer, Norfolk, which appears to have been sued under the name of the General Partner, Hiltveit. (See Ex. A to Werring Declaration, Clause 4).

Following attachment of Zarepta's assets, by letter dated June 5, 2008, Zarepta's counsel provided to Stolthaven's counsel a copy of the relevant Bareboat Charter. A true and correct copy of the letter of June 5, 2008 enclosing the Bareboat Charter is attached to the Affidavit of William J. Honan, dated June 11, 2008 ("Honan Affidavit") as Exhibit D. In addition, the letter enclosed a copy of the payment order for the funds that were attached which showed that the funds had no connection to Norfolk. (*Id.*). Zarepta's counsel requested that the attached funds be released but Stolthaven declined to do so. A true and correct copy of the email from Stolthaven's counsel, Don Murnane, dated June 9, 2008, refusing to release the attached funds is attached to the Honan Affidavit as Exhibit E.

## ARGUMENT

Stolthaven's Attachment Order should be vacated by this Court. In order to sustain an *ex parte* order of attachment pursuant to Rule B, the plaintiff must show:

> 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006).

Because "the ease with which a *prima facie* case for attachment can be made creates a real risk of abusive use of the maritime remedy," *Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.*, 384 F. Supp. 2d 726, 729 (S.D.N.Y. 2005), *vacated on other grounds*, 460 F.3d 434 (2d Cir. 2006), Rule E(4)(f) provides any person claiming an interest in the attached property with "a

3

prompt hearing at which the plaintiff shall be required to show why the ... attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f).

When considering the adequacy of a plaintiff's claim, courts within this district have applied different standards. While some courts employ a more stringent "reasonable grounds" evidentiary standard and assess the offering of proof a plaintiff produces in support of its claim (and meeting its burden under Rule E(4)(f)), the majority of courts interpreting *Aqua Stoli* have applied the *prima facie* pleading standard when determining whether to uphold the plaintiff's maritime attachment. *See, e.g., OGI Oceangate Trans. Co. v. RP Logistics Pvt. Ltd.*, No. 06 Civ. 9441, 2007 WL 1834711, at *4 (S.D.N.Y. June 26, 2007) (collecting cases assessing both standards and ultimately joining the majority of courts in employing the *prima facie* standard); *Fesco Ocean Mgmt., Ltd. v. High Seas Shipping Ltd.*, No. 06 Civ. 1055, 2007 WL 766115, at *2 (S.D.N.Y. Mar. 12, 2007) (same).

Despite the *prima facie* admiralty claim standard, plaintiffs in admiralty suits remain subject to a heightened pleading standard under Rule E(2)(a):

> Suits in admiralty are subject to Supplemental Rule E(2)(a), which provides that:
>
>> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.
>
> Fed. R. Civ. P. Supp. Rule E(2)(a). "This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." *P.R. Ports Auth. v. Barge KATY-B,* 427 F.3d 93, 105 (1st Cir. 2005) (noting that "[o]rdinary notice pleading does not satisfy the stringencies of [the supplemental] rules").

*OGI Oceangate*, 2007 WL 1834711, at *4; *accord Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 519 F. Supp. 2d 399, 409 (S.D.N.Y. 2007) (citing *United States v. 4492 S.*

*Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989); *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979, 2006 WL 4459297 (S.D.N.Y. Aug. 15, 2006)); *Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007).

Here, the Court need not determine whether the reasonable grounds or *prima facie* standard is proper, as Plaintiff's claim fails under even the more lenient *prima facie* test. Accordingly, as discussed below, Defendant respectfully submits that the Attachment Order should be vacated.

## POINT I

### PLAINTIFF DOES NOT HAVE A VALID *PRIMA FACIE* ADMIRALTY CLAIM

Plaintiff's allegations against Zarepta do not state a valid *prima facie* admiralty claim. There is a difference between asserting an admiralty claim and a valid *prima facie* admiralty claim under *Aqua Stoli*. See *T&O Shipping, Ltd. v. Lydia Mar Shipping Co.*, 415 F. Supp. 2d 310, 312 (S.D.N.Y. 2006). As recently stated by Judge Haight,

> It is common ground that a charter party is a maritime contract, so [plaintiff] is asserting an "admiralty claim" against [defendant]; but is it a ***valid*** "prima facie admiralty claim," as Rule B requires? This is a question of substantive law.

*Sonito Shipping Co. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007) (emphasis in original). Thus, as Judge Haight stated, a Plaintiff must state a "valid *prima facie* admiralty claim" to support a Rule B attachment. *Id.*

As the caption to this proceeding makes clear, Stolthaven has sued Zarepta "*in personam*." However, Stolthaven does not have an *in personam* claim (or any other claim) against Zarepta. Stolthaven's Complaint alleged in paragraph 4:

> The M/T RACHEL B was and now is a merchant tank vessel owned, operated, and managed by HILTVEIT ASSOCIATES, INC. and/or ZAREPTA CHEMICAL KS …

5

This allegation, made on information and belief, appears to form the basis for the claim against Zarepta.

According to the Bareboat Charter terms, Hiltveit has complete responsibility for all "charges and expenses of every kind and nature whatsoever incidental to their use and operation of the Vessel." (Ex. A to Werring Declaration, Bareboat Charter ¶ 9(b)). Zarepta has no responsibility for charges incurred by Hiltveit such as the terminal services provided by Stolthaven.

The Bareboat Charter's shifting of full responsibility for any costs to the charterer is standard in the industry, as explained in the respected treatise *Bareboat Charters*:

> Since by its nature the bareboat chartering of a vessel entails the owners giving up to the charterers the full possession and control of the ship, it is usually an integral feature of the arrangement that the responsibility for maintenance and operation and all costs and expenses relating thereto shall be borne by the charterers.

Mark Davis, *Bareboat Charters* 54 (2d ed. 2005). Thus, as explained by Davis, Zarepta has given up "to the charterers full possession and control of the ship." *Id.* Courts recognize that "[a] bareboat or 'demise' charter involves the transfer of full possession and control of a vessel for the duration specified in the contract." *Cary Marine v. MV Papillon*, 872 F.2d 751, 753 n.1 (6th Cir. 1989) (citing Schoenbaum, *Admiralty & Maritime Law* 382 (1987)). The charterers bear full responsibility for "maintenance and operation and all costs and expenses" for the Vessel under the Bareboat Charter during the contract period. Davis, *Bareboat Charters* 54.

It is well established, as a matter of law, that during the bareboat charter period the bareboat charterer has full liability for all services provided to the vessel. In 2002, the Ninth Circuit rejected the argument that the owner of a vessel under bareboat charter was liable for seamens' wage claims. *Sampson Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 638 (9th Cir. 2002). As the Ninth Circuit explained:

6

> This contention, however, ignores that a valid "bareboat" charter agreement existed between Olympic [the Owner] and IMAR [the charterer] through February 17, 2000. Under this charter, IMAR became the *Fierce Packer's* de facto owner and, as such, only IMAR is liable *in personam* for these seamen's wage claims.

*Id.* (citing *Everett v. United States*, 284 F. 203, 205 (9th Cir. 1922)). Similarly, a district court rejected a stevedore's claim against the owner of a vessel under bareboat charter:

> Navrom [the owner] could not possibly be held liable for the stevedoring services provided to the M/V COVASNA when there is a bareboat charter. A bareboat charter essentially transfers ownership of a vessel *pro hac vice* to the bareboat charterer. *Reed v. Steamship Yaka*, 373 U.S. 410, 412, 83 S. Ct. 1349, 10 L. Ed. 2d 448 (1963) ("It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as owner, generally called owner *pro hac vice*."); *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993) ("Consequently, the bareboat charterer as a demise charterer is the owner *pro hac vice* of the vessel for the duration of the contract."). Therefore, any liabilities traditionally incurred by a vessel owner are those of the charterer.

*Maritrend, Inc. v. M/V Sebes*, No. 96-3140, 1997 U.S. Dist. LEXIS 23594, *11 (E.D. La. 1997).

Thus, Zarepta has no liability for the terminal services provided by Stolthaven.

Stolthaven does not have a contract with Zarepta. There is no relationship at all between Zarepta and Stolthaven. In paragraph 8 of the Complaint, Stolthaven alleges, in relevant part,

> At 1406 hours on March 5, the Terminal issued notice to Owners to vacate the berth. (See [Complaint] Exhibit B, e-mail exchange with Defendant Hiltveit dated March 5-6, 2008).

Here, Stolthaven appears to acknowledge that it was dealing with Hiltveit as the owner and not with Zarepta. An examination of Plaintiff's Exhibit B demonstrates that notice was given to Hiltveit and not Zarepta. Similarly, the invoice for wharfage charges was submitted to Hiltveit and not to Zarepta. (Exhibit C to the Complaint).

In addition, Stolthaven alleges in the Complaint that "Plaintiff has made demand for payment upon the Defendants herein" and, in support of this allegation, refers to "Exhibits C and D, e-mail letter from Plaintiff to Defendant Hiltveit." (Complaint ¶ 11). This allegation is

disingenuous and the exhibits do not show that a demand was made on Zarepta. A review of Exhibits C and D shows that a demand was not made on "Defendants" but only on Hiltveit. No demand was made on Zarepta because Zarepta has no connection to the dispute.

The allegations made by Stolthaven are all made on information and belief and the documentary support apparently relied on to support the allegations gives no support to any allegations against Zarepta. The documents establish a relationship between Stolthaven and Hiltveit. Plaintiff's citation to these documents to support its claims against Zarepta is misleading. Stolthaven's allegations without any support whatsoever, made on information and belief, are insufficient to support the maritime attachment of Zarepta's funds. The attachment should be vacated because Stolthaven did not plead a maritime claim against Zarepta. The Complaint may have appeared to have alleged a maritime claim but the documents relied on showed no connection to Zarepta at all.

As is more fully explained below, Stolthaven appears to have named Zarepta in this suit and sought a Rule B attachment of Zarepta's assets because Hiltveit's assets cannot be attached in the Southern District of New York.

### POINT II

### PLAINTIFF'S ATTACHMENT OF ZAREPTA'S FUNDS WAS EITHER WRONGFUL OR CONSTITUTES AN ABUSE OF PROCESS

According to the Bareboat Charter Norfolk's address appears to be 150 Motor Parkway, Hauppague, New York 11788. The Second Circuit has established the grounds on which an attachment can be vacated and one of those grounds would be applicable here. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006).

8

> Circumstances that may justify a vacatur can occur where 1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment.

*Id.* In explaining the first of these grounds the Second Circuit set forth the situation involving adjacent districts that would be before this Court if Norfolk's assets were attached by Stolthaven in this case. Norfolk is located in and subject to jurisdiction in Hauppauge, New York, which is in the Eastern District of New York. The attachment of electronic fund transfers would be sought in the Southern District of New York. According to the Second Circuit, this "across the river" attachment would be a "paradigmatic example of a case where an attachment should be vacated." *Id.* at 444.

> Although the precise boundaries of a district court's vacatur power are not before us, we are persuaded that vacatur may be warranted when the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff. *See Integrated*, 476 F. Supp. at 124; *cf. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52-53 (2d Cir. 1965) (discussing, but not resting on, the district court's vacatur of an attachment issued in the Eastern District because the defendant was present in the Southern District). The concept of "convenience," however, is narrowly circumscribed one: A district court may vacate a maritime attachment only if the defendant would be subject to an in personam lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought. An "across the river" case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated.

*Id.*

Thus, Stolthaven is unable to attach electronic fund transfers to or from Norfolk as they pass through the Southern District of New York. Therefore, it would appear that Stolthaven has sued Zarepta in order to find attachable assets to secure its claim. This use of attachment when Stolthaven has no legitimate claim against Zarepta either was wrongful or constitutes an abuse of process.

9

## A. WRONGFUL ATTACHMENT

If Stolthaven knew that the Vessel was under Bareboat Charter at the time it sought the attachment, then its actions would amount to malicious prosecution. *Coastal Barge Corp. v. M/V Maritime Prosperity*, 901 F. Supp. 325, 329 (M.D. Fla. 1994). Here, as the Vessel has been operating under Bareboat Charter since 2004, and as Zarepta's registered ownership clearly was known to Stolthaven when it commenced this lawsuit, it is a question whether Stolthaven was aware of the Bareboat Charter at the time it commenced this proceeding but nevertheless named Zarepta as a defendant. If Stolthaven knew of the Bareboat Charter, the law is clear that it had no claim against Zarepta. See *supra* Point I. By failing to disclose this fact to the Court in obtaining the Attachment Order against Zarepta, Stolthaven may have acted similar to the plaintiff in *Coastal Bare Corp.*, which was held liable for wrongful arrest for failing to disclosure a material fact to the Court in obtaining the, later found to be wrongful, arrest. *Coastal Barge Corp.*, 901 F.Supp. at 329.

Discovery on this issue will determine what Stolthaven knew, and when. But regardless of whether Stolthaven knew of the existence of the Bareboat Charter *before* the commencement of this proceeding, Stolthaven's refusal to release the attached funds *after being advised of the Bareboat Charter* unquestionably constitutes an abuse of process.

## B. ABUSE OF PROCESS

Abuse of process has three elements:

(1)  regularly issued process either civil or criminal;
(2)  an intent to do harm without excuse or justification; and
(3)  use of the process in a perverted manner to obtain a collateral objective.

*Piep v. Baron*, 506 N.Y.S.2d 838, 840 (N.Y. Civ. Crt. 1986) (citing *Board of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n. Inc.*, 38 N.Y.2d 297, 403, 380 N.Y.S.2d 635 (N.Y. 1975)).

Here the attachment order was "regularly issued [civil] process," satisfying the first abuse of process requirement. *Id.* As has been shown in Point I, Stolthaven has no claim against Zarepta and has attached Zarepta's assets "without excuse or justification". *Id.* This satisfies the second requirement. The third requirement is satisfied because with no legitimate claim against Zarepta, and no connection between Zarepta and the dispute, only a "collateral objective" could be the basis for Stolthaven's claim. *Id.* One can only guess at Stolthaven's objectives in pursuing Zarepta but among such guesses would be that Stolthaven hopes that Zarepta, as the Vessel's owner, will put pressure on Norfolk and/or Hiltveit to settle the claim with Stolthaven.

In any event, Stolthaven's refusal to release the attached funds when the Bareboat Charter was made known to it are an abuse of the process of maritime attachment. The law regarding bareboat charter's is well established and Stolthaven has no claim against Zarepta. (See *supra* Point I). Stolthaven was made aware of the Bareboat Charter by letter dated June 5, 2008. (Honan Affidavit ¶ 4, Ex. D).

Moreover, Stolthaven's reliance on documents to support the allegations in the Complaint also show an abuse of process. See *supra* Point I. Stolthaven misled the Court by relying on documents to support its allegations against Zarepta where those documents only supported allegations against Hiltveit. Stolthaven gave the impression to this Court that its Complaint against Zarepta was supported by documentary evidence when that was not the case. None of the exhibits attached to the Complaint bear any relationship to or contain any mention of Zarepta. In Exhibit B attached to the Complaint Stolthaven refers to Hiltveit as "Owners". In Exhibit D

attached to the Complaint, assistant general counsel for Stolt Nielsen USA, on behalf of Stolthaven, writes regarding the dispute and addresses Hiltveit as "Owners".

These references suggest that Stolthaven was aware that Hiltveit was acting in its capacity as owner pursuant to a bareboat charter and that Stolthaven did not expect to pursue any other party as owner of the vessel.

The claim against Zarepta is without foundation and has been brought only to support the attachment of funds. Stolthaven's attachment of Zarepta's funds either was wrongful or its refusal to release the attachment is an abuse of process. In either case, the attachment should be vacated.

### POINT III

### THE ATTACHED FUNDS ARE UNRELATED TO THIS ACTION

As more fully explained in the Werring Declaration, the attached funds were a payment to the BTMU Capital Corporation in payment for BTMU Capital Corporation Invoice #V-1831. (Werring Declaration ¶¶ 9-10, Exs. B, C). The payment has no relationship to Norfolk or Hiltveit and has no relationship to Stolthaven's claim. (Werring Declaration, ¶ 11).

Zarepta has no corporate relationship with Norfolk, the bareboat charterer, nor with Hiltveit which has been sued by Stolthaven. (Werring Declaration, ¶ 8). There are no grounds for attaching Zarepta's funds and in particular there are no grounds for attaching the funds now under attachment. The attachment should be vacated.

## CONCLUSION

Defendant respectfully requests that the Court grant Defendant's motion to vacate the Attachment Order, along with such other and further relief as this Court deems fair and just.

Dated: New York, New York
      June 11, 2008

HOLLAND & KNIGHT LLP

By: _____
William J. Honan
Michael J. Frevola
Francesca Morris

195 Broadway
New York, New York 10007-3189
(212) 513-3200

*Attorneys for Defendant*
*Zarepta Chemical KS*

# 5396395_v1