249-08/DPM/MAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

STOLTHAVEN HOUSTON INC.,                                    **08 CIV. 4327 (RPP)**

                           Plaintiff,

     -against-

RACHEL B, its engines, tackle apparel, etc., *in rem*, and
HILTVEIT ASSOCIATES, INC. and ZAREPTA
CHEMICAL KS, *in personam,*

                           Defendants.
--------------------------------------------------------------------x


## **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE THIS COURT'S MARITIME ATTACHMENT ORDER**


                                        FREEHILL HOGAN & MAHAR, LLP
                                        Attorneys for Plaintiff
                                        80 Pine Street, 24th floor
                                        New York, New York 10005
                                        (212) 425-1900

Don P. Murnane
Manuel A. Molina
  Of Counsel


NYDOCS1/306633.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... ii

PRELIMINARY STATEMENT.......................................................... 1

BACKGROUND FACTS ……................................................................. 3

 ARGUMENT.......................................................................................... 3

### POINT I

PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER
RULE E(4)(f)AND THE ATTACHMENT OF DEFENDANT'S FUNDS
MUST THEREFORE BE MAINTAINED................................……..…….............. 3

### POINT II

THE PURPORTED "BAREBOAT CHARTER," ON ITS FACE,
EXPRESSLY RETAINS FOR ZAREPTA CONTROL OVER THE
OPERATION AND MANAGEMENT OF THE M/T RACHEL B

A.   Zarepta has not asserted sufficient facts establishing
complete divestiture of control and possession of the
Rachel B; indeed the evidence establishes the opposite;
namely that Zarepta retained control over the vessel ................. 6

B    The Werring Declaration contains no facts to support
Zarepta's claim of a true demise ...................................... 8

C.   The Zarepta-Norfolk charter party taken as whole does
not establish a true demise…………………………………….. 8

### POINT III

ALTERNATIVELY, STOLTHAVEN WOULD BE ENTITLED TO
DISCOVER THE TRUE NATURE OF THE RELATIONSHIP
BETWEEN ZAREPTA AND NORFOLK ......................................................... 13

## **POINT IV**

STOLTHAVEN'S ATTACHMENT OF ZAREPTA'S FUNDS
WAS NOT WRONGFUL OR AN ABUSE OF PROCESS...…………….. 14

CONCLUSION …....……………………………………………………….…....... 17

# TABLE OF AUTHORITIES

**Cases**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,*
 460 F.3d 434 (2d Cir. 2006)........................................................................................... 3

*Cia Estrella Blanca, Ltda. v. Scnitzer Steel Products Co.,*
 247 F. Supp. 161, (D.Or. 1965), *aff'd*, 368 F.2d 575 (9th Cir. 1966).......................... 9

*Citrus Marketing Board of Israel v. J. Lauritzen A/S,*
 943 F.2d 220 (2d Cir. 1991)........................................................................................... 6

*Dolco Inves. Ltd. v. Moonriver Dev. Ltd.,*
 486 F. Supp. 2d  261 (S.D.N.Y. 2007).......................................................................... 3

*Dominica Mining Co., Ltd. v. Port Everglades Towing Co.,*
 318 F. Supp. 500 (S.D.Fl. 1969) ................................................................................... 9

*Fitzgerald v. A.L. Burbank & Co., Ltd.,*
 451 F.2d 670 (2d Cir. 1971)........................................................................................... 7

*Frontera Fruit Co., Inc. v. Dowling,*
 91 F.2d 293 (5th Cir. 1937) ......................................................................................... 15

*Furness Withy (Chartering), Inc. v. World Energy Systems Assocs., Inc.,*
 772 F.2d 802 (11th Cir. 1985) ..................................................................................... 15

*Gaspard v. Diamond Drilling Co.,*
 593 F.2d 605 (5th Cir. 1979) ......................................................................................... 6

*Leary v. United States,*
 81 U.S. (14 Wall) 607 (1871); .......................................................................................6

*Guzman v. Pichirilo,*
 369 U.S. 698 (1962)........................................................................................................ 6

*Maryland Tuna Corp. v. MS Benares,*
 429 F.2d 307 (2d Cir. 1970).......................................................................................... 13

*OGI Ocean Gate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd.,*
 No. 06-9441, 2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007)........................ 15

*Result Shipping Co. v. Ferruzzi Trading USA, Inc.,*
 56 F.3d 394 (2d Cir. 1995)............................................................................................ 15

*Rolls Royce Ind. Power (India) v. M.V. FRATZIS M,*
1996 A.M.C. 390 (S.D.N.Y. 1995) .................................................................................... 13, 14

*Ronda Ship Management Inc. v. Doha Asian Games Organising Committee,*
511 F. Supp. 2d 399, (S.D.N.Y. 2007) ............................................................................. 3, 4, 5

*Rose v. Chaplin Marine Transport, Inc.,*
895 F. Supp. 856 (E.D.W.Va. 1995) ...................................................................................... 7

*Saridis v. Liberia S.S. PARAMARINA,*
216 F. Supp. 794 (E.D.Va. 1962) ..................................................................................... 8, 9

*The Bloomer Chocolate Co. v. Nosira Sharon Ltd.*
776 F. Supp. 760 (S.D.N.Y. 1991) ....................................................................................9,
10

*Thypin Steel Co. v. Certain Bills of Lading Issued for a Cargo of 3017 Metric Tons
More or Less of Hot Rolled Steel Plates*, 2001 A.M.C. 2832 (S.D.N.Y. 2001) ........................... 15

*Tide Line, Inc. v. Eastrade Commodities, Inc.,*
No. 06-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.NY. Aug. 15, 2006) ..................................... 3, 4

*Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.,*
No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) ................................... 3, 4, 5

*Zabriskie v. City of New York*, 160 F. 235 (S.D.N.Y. 1908) .......................................................... 8

Plaintiff, STOLTHAVEN HOUSTON, INC. ("Stolthaven"), by and through its counsel Freehill, Hogan & Mahar, LLP, respectfully submits this memorandum of law in opposition to the motion of Defendant ZAREPTA CHEMICAL KS ("Zarepta" or "Defendant") seeking to vacate this Court's Order of attachment.

### PRELIMINARY STATEMENT

In a futile attempt to insulate itself from *in personam* liability for damages caused by its vessel the M/T RACHEL B, Zarepta seeks, unsuccessfully, to cloak itself with a false claim to "bareboat owner" status.

Using a shell "Marshall Islands Limited Partnership" known as "Norfolk L.P." and a "vessel manager," Zarepta has sought to construct what it purports is a "bareboat charter" relationship with Norfolk to block Stolthaven's claim, upon which the instant attachment is based. The lynchpin of an authentic bareboat charter, however, is the absolute and complete divestiture of the control, management and possession of a vessel by its owners. Zarepta, as the party seeking to avoid personal liability, bears the "heavy" burden of proof to establish the demise nature of the document Zarepta ostensibly describes as a "bareboat charter."

But even a cursory review of the rider terms and conditions of the alleged "bareboat charter" shows conclusively that the relationship with Norfolk is anything but a true bareboat demise and that Zarepta has not relinquished absolute and exclusive control over the technical management or operation of the vessel. The form "BIMCO – Barecon 89 Standard Bareboat Charter" on which the charter was prepared has been substantially altered. The most basic indicia of true bareboat status, namely control over the management and operation of the vessel, has not been fully transferred to Norfolk, as is required by law.

In point of fact, Zarepta has expressly retained substantial direct control over:

- Approval of the terms and conditions of the vessel's **technical management agreement;**

- Decisions regarding the **dismissal of the vessel's manager;**

- **Alterations of the vessel's management agreement;**

- **Appointment of the vessel's manager;**

- Approval or disapproval of payments, emanating from a special bank account, used directly for the **operation of the vessel;**

- Approval over the charterer's decision "to change their business in any material respect."

Zarepta's expressed and unambiguous retention of control is, as a matter of law, incompatible with, and fundamentally undercuts, Zarepta's purported status as a demised owner, thereby defeating Zarepta's attempt to insulate itself from *in personam* liability.

Zarepta's "tack on" allegations of "wrongful attachment" or "abuse of process" are, accordingly, equally meritless. If anything, scrutiny should be directed toward Zarepta concerning the degree of investigation and analysis undertaken in support of its motion prior to filing.

In short, Defendant's motion lacks merit and must be denied in all respects.

**FACTS**

Plaintiff respectfully directs this Court's attention to, and incorporates by reference here, the Affidavit of Daniel Carr, dated June 13, 2008    ("Carr Decl."), for a full exposition of the facts relevant to the disposition of defendant's motion.

**ARGUMENT**

**POINT I**

**PLAINTIFF STOLTHAVEN HAS SATISFIED ITS BURDEN
OF PROOF UNDER RULE E(4)(f) AND THE ATTACHMENT
OF DEFENDANT'S FUNDS MUST THEREFORE
BE MAINTAINED**

To sustain its burden and defeat a motion to vacate, Plaintiff needs only demonstrate that: (1) the cause of action arises within the Court's admiralty jurisdiction; (2) the Defendant cannot be found within the District; and (3) the Defendant has property within this District. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006).

Although *Aqua Stoli* does not exactly state what a plaintiff must show to meet this burden, the majority of the courts of this district have adopted a *prima facie* standard. *Ronda Ship Management Inc. v. Doha Asian Games Organising Committee*, 511 F. Supp. 2d 399, 403-4 (S.D.N.Y. 2007) *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.NY. Aug. 15, 2006); *Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.*, No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007); *Dolco Inves. Ltd. v. Moonriver Dev. Ltd.*, 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007).  As Judge McMahon stated in *Ronda*, following a review of the pertinent case law: "The majority of courts in this district have understood *Aqua Stoli* to require the application of the prima facie

standard when considering the adequacy of a claim in a maritime vacatur motion." 511 F. Supp. 2d at 403.[1]

Under this *prima facie* standard, a Rule E(4)(f) hearing is not intended to, and should not, be a fact-intensive inquiry into the underlying merits of plaintiff's claim. All that the plaintiff needs to defeat a Rule E(4)(f) motion to vacate is a proper verified complaint. *Tide Line*, 2006 U.S. Dist. LEXIS 95870, *15-16; *Transportes Navieros*, 2007 U.S. Dist. LEXIS 50260, *11.

As Chief Judge Wood has stated:

> Thus to show that it has a *prima facie* claim, a plaintiff need not provide any supporting evidence; its complaint should suffice. Furthermore *Aqua Stoli* implies that a plaintiff is likewise ***not required to provide evidence*** showing that it has a claim against defendant to carry its burden under Supplemental Rule E(4)(f).

2006 U.S. Dist. LEXIS 95870, *15-16 (emphasis supplied).

In *Ronda*, the Court held that, when considering the adequacy of a claim in a maritime vacatur motion, "the *prima facie* standard in the maritime attachment context is a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts;" hence, "[u]nder this standard, the Court ***looks only to the Complaint*** to determine whether the plaintiff has alleged a valid admiralty claim against the defendant." *Id.* (emphasis supplied). The Court went on to add:

> While the defendant can argue that the plaintiff does not have a valid prima facie admiralty claim against the defendant, the basis of ***the argument cannot be that the plaintiff has not provided sufficient evidence of such a claim***. Instead, the defendant must argue that "plaintiff's pleadings are themselves insufficient to state such a claim."

511 F. Supp. at 404 (citations omitted; emphasis supplied).

---

[1] Other jurists in this District, however, have required more, imposing on a maritime plaintiff the obligation to demonstrate that "reasonable grounds" exist for the attachment. In so doing, a plaintiff is required to introduce material beyond the pleadings. Regardless of the standard to be applied, Stolthaven, as will be more fully developed *infra*, has a valid *prima facie* maritime claim.

Here, Defendant does not deny the allegations in Plaintiff's Verified Complaint that the Defendant cannot be found in the District or that Plaintiff has attached property of the Defendant located in the District. Moreover, the Verified Complaint asserts that Zarepta, among others and as the registered owner of the M/T RACHEL B, breached its maritime contract with Stolthaven to pay for terminal services provided to Zarepta's vessel. (Verified Complaint, ¶¶6-8). Zarepta concedes that it is the M/T RACHEL B's registered owner but denies that it is liable to Plaintiff on the basis that it has divested itself of all operation and control of the vessel by virtue of a contract that Zarepta conclusorily describes as a "bareboat charter party." As will be discussed more fully in Point II below, the determination of whether a charter can be properly deemed a demised charter is an issue of fact for the Court to decide. **Zarepta, which carries a heavy burden of proof on this issue, has failed to provide sufficient evidence of true bareboat owner status; indeed, the charter on which Zarepta relies proves the opposite**.

Accordingly, it is clear that Plaintiff has satisfied its burden of proof that the challenged attachment should be maintained. Therefore, Defendant's motion should be denied in its entirety. *Ronda*, 511 F. Supp. at 403-05; *Transportes Navieros*, 2007 U.S. Dist LEXIS 50260, *12.

## POINT II

### THE PURPORTED "BAREBOAT CHARTER," ON ITS FACE, EXPRESSLY RETAINS FOR ZAREPTA CONTROL OVER THE OPERATION AND MANAGEMENT OF THE M/T RACHEL B

The thrust of Defendant's motion is that Zarepta cannot be held responsible *in personam* for any unpaid terminal services provided by Stolthaven to the RACHEL B because Zarepta has transferred full possession and control of the vessel to Norfolk, pursuant to the terms of a

purported bareboat charter with Norfolk. Zarepta has apparently failed to study the full terms of the charter prior to filing its motion.

There is no dispute that a true bareboat charter shifts responsibility for any costs incurred from the shipowner to the charterer. However, it is also clear that the lynchpin of a bareboat charter is the absolute and full divestiture of the operation and control of the vessel by the shipowner. *Leary v. United States*, 81 U.S. (14 Wall) 607 (1871); *Guzman v. Pichirilo*, 369 U.S. 698 (1962); *Citrus Marketing Board of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 221 n.3 (2d Cir. 1991). Stolthaven respectfully submits that Zarepta, on its own submission, has not, and cannot, satisfy its heavy burden of proof that it has relinquished full control and operation of the RACHEL B.

**A.    *Zarepta has not asserted sufficient facts establishing complete divestiture of control and possession of the RachelB; indeed the evidence establishes the opposite; namely that Zarepta retained control over the vessel***

The Supreme Court has unequivocally stated:

> To create a demise the owner of the vessel must **completely and exclusively** relinquish "possession, command, and navigation" thereof to the demisee . . . . It is therefore tantamount to, though just short of, an outright transfer of ownership. However, **anything short of such complete transfer** is a time or a voyage charter party or not a charter party at all.

*Guzman*, 369 U.S. at 699 (citations omitted; emphasis supplied). *See also Leary*, 81 U.S. 607 ("All the cases agree that **entire** command and possession of the vessel, and consequent control over its navigation, must be surrendered to the charterer before he can be held as special owner for the voyage or other service mentioned") (emphasis supplied); *Citrus Marketing*, 943 F.2d at 221 n.3 ("a demise, or 'bareboat charter,' is the 'transfer of **full** possession and control of the vessel for the period covered by the contract'") (citation omitted; emphasis supplied).

Importantly for purposes of Zarepta's motion, because a shipowner may successfully escape personal liability for the control, management and/or operation of the vessel, it bears the burden of proof to demonstrate the existence of "**facts** which give rise to such relief." *Guzman*, 369 U.S. at 700 (emphasis supplied); *In re The Admiral Towing and Barge, Co.*, 767 F.2d 243, 248 (5th Cir. 1985).

In this regard, the Supreme Court has held:

> **This burden is heavy, for courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship.**

*Guzman*, 369 U.S. at 700 (emphasis supplied). *See also Fitzgerald v. A.L. Burbank & Co., Ltd.*, 451 F.2d 670, 676 (2d Cir. 1971) ("the party attempting to show that the owner of the vessel has been relieved of the legal obligations flowing to him as owner must bear the heavy burden of establishing the facts which prove his point").

As a result, courts have created a presumption against the existence of a demise unless the language of the charter party and the surrounding circumstances conclusively establish the relinquishment of full control and possession over the vessel. *Rose v. Chaplin Marine Transport, Inc.*, 895 F. Supp. 856 (E.D.W.Va. 1995) ("a time charter rather than a bareboat charter is presumed to exist as a matter of law and such presumption may be overcome only by specific facts showing that a demise charter existed"). *See also Gaspard v. Diamond Drilling Co.*, 593 F.2d 605, 607 (5th Cir. 1979) (affirming lower court's JNOV ruling that appellant had not overcome presumption against bareboat charter agreement).

Scrutiny of the Zarepta-Norfolk charter party and the Declaration of Morten E. Werring ("Werring Decl.") demonstrates that Zarepta has utterly failed to sustain its heavy burden to show full and complete transfer of control and possession to Norfolk.

**B.**    ***The Werring Declaration contains no facts to support Zarepta's claim of a true demise.***

The Werring Declaration is a self-serving statement that provides no facts whatsoever concerning the true relationship between Zarepta and Norfolk. Mr. Werring merely relies upon the document that he conclusorily identifies as a bareboat charter party. Accordingly, the Werring Declaration by itself is insufficient to overcome the presumption against the existence of a demise charter.

**C.**    ***The Zarepta-Norfolk charter party taken as whole does not establish a true demise.***

Zarepta's only "legal" basis for maintaining that it has bareboat chartered the M/T RACHEL B to Norfolk is the standard printed form Clause 9(b) contained in the Zarepta-Norfolk charter. However, the actual charter party also contains 24 "Additional Clauses" or "Riders, RACHEL B" which Zarepta separately negotiated with Norfolk. Many of the Additional Clauses are incompatible with Zarepta's assertion that Zarepta has relinquished absolute and exclusive control over the management or operation of the vessel. In short, "what the BIMCO printed form giveth, the Zarepta Rider Clauses hath taken away."

It is well-settled that the question of whether a particular charter party agreement constitutes a demise of the vessel is resolved by examining the instrument as a whole and does not depend upon the existence of a printed form clause to that effect. *Zabriskie v. City of New York*, 160 F. 235 (S.D.N.Y. 1908); *Saridis v. Liberia S.S. PARAMARINA*, 216 F. Supp. 794 (E.D.Va. 1962). As the *Zabriskie* court remarked:

> In the earlier cases there was a tendency to hold that if there were technical words of demise, this was enough to transfer the possession and control and consequently the liability to the charterer; but the later cases have established that the question whether the possession and control is transferred to the charterer must be determined by the intention of the parties as expressed by the wording of the contract as whole.

160 F. at 237. *See also Saridis*, 216 F. Supp. at 797 ("Even where words of demise are used, yet it must appear that the instrument taken as a whole was intended to operate as such or it will not be so construed").

Moreover, it is equally well-established that added type-written provisions in a charter party are accorded more weight than printed form clauses. *Dominica Mining Co., Ltd. v. Port Everglades Towing Co.*, 318 F. Supp. 500, 504, n.6 (S.D.Fl. 1969) ("Of course, a typewritten provision should be accorded more weight"); *Cia Estrella Blanca, Ltda. v. Scnitzer Steel Products Co.*, 247 F. Supp. 161, 168 (D.Or. 1965), *aff'd*, 368 F.2d 575 (9th Cir. 1966) ("It is a fundamental rule of charter construction that the typewritten provisions take preference over the printed language"). Close examination of the charter party at issue reveals that Zarepta did not surrender full control and possession of the vessel. In fact, several Additional Clauses demonstrate that Zarepta retained significant technical management over the vessel as well as financial control over the operational activities of the vessel, which retention is incompatible with the creation of a bareboat charter. *The Blommer Chocolate Co. v. Nosira Sharon Ltd.*, 776 F. Supp. 760 (S.D.N.Y. 1991).

For example, while the BIMCO printed form Clause 9(b) contains language of a demise charter, Additional Clause 47(d) gives back to the Owner what 9(b) takes away and demonstrates that Zarepta has not divested itself of full control and operation of the RACHEL B. That Clause prescribes as follows:

### 47. UNDERTAKINGS

The Charterers [Norfolk] undertake and agree that throughout the Charter Party they will:

* * *

(d) enter into a **technical management agreement** with Hiltveit Associates, Inc. (the "Managers"), **which shall be approved by the Owners** [Zarepta], and, **not without prior written consent of the Owners** (such consent not to be unreasonably withheld), **dismiss the Manager, alter the Management Agreement or appoint a new manager** for the Vessel . . . .

(Werring Declaration, Ex. A, Additional Clause 47(d); emphasis supplied).

It is evidently clear that Zarepta has retained control over the technical management of the vessel since Zarepta: (a) controls approval of the technical management agreement with Defendant Hiltveit; (b) controls decisions as to the dismissal of Hiltveit as "Manager;" (c) controls any alteration of the Management Agreement with Hiltveit; and (d) controls the appointment of any new manager for the vessel by Norfolk.

In *The Blommer Chocolate* case, the parties had agreed to a printed form clause that provided that "the vessel shall during the charter period be in the full possession and the absolute disposal for all purposes of the Charterers, and under their complete control in every respect." 776 F. Supp. at 765. Despite this form Clause, the district court determined that other alterations to the charter had undercut its purported demise nature:

> Next, a significant proportion of other clauses were completely redacted or otherwise altered, thereby rendering extremely suspect the purported "standard bareboat" nature of this charter. Both factors the vague or incomplete clause and the numerous redactions or alterations of other language contribute to the court's findings that the agreement between [Owners] and [Charterers] was not a "true demise charter", and hence, [Owners] could be subject to *in personam* liability assuming the master authorized the signing of the bill of lading.

776 F. Supp. at 765-66.

Equally significant, Zarepta Additional Clause 47(h) establishes that Zarepta also makes financial decisions that directly impact on the operations of the vessel. That Clause requires Norfolk to maintain a "Pledged Amount" of "USD 4,000,0000" in favor of the "Mortgagee and [Zarepta]," and further prescribes that:

> (bb) USD 500,000 of the Pledge Amount may, if required, **and subject to the consent of the Owners** [Zarepta] and the Mortgagee, **be used** by the Charterer [Norfolk] **for operation** of the Vessel.

(Werring Declaration, Ex. A, Additional Clause 47(h)(bb); emphasis supplied). Thus, it is clear that under Additional Clauses 47(d) and 47(h)(bb), Zarepta continues to exercise significant control over the management and operations of the RACHEL B. This is fundamentally and, for Zarepta, fatally inconsistent with the essential requirement of a bareboat charter that the shipowner relinquish complete and exclusive control over the vessel's operations.

Also, pursuant to Additional Clause 47(g), Zarepta retains the authority to approve Norfolk's decision to "change their business in any material respect." By its clear terms, this Clause demonstrates that Norfolk lacks true autonomy as Charterer. Indeed, this point seems to be buttressed by Additional Clause 55, which deals with notices and communications between Zarepta and Norfolk. While Zarepta provided full details of where notices should be sent, Norfolk's contacts details are tellingly blank:

> **"55. COMMUNICATIONS**
>
> Except as otherwise provided for in the Charter, all notices or other communications under or in respect of this Charter to either party shall be in writing and shall be made or given to such party at the address, telex number or fax number appearing below . . . :
>
> (i) in the case of the Owners:
> Zarepta Chemical KS
> c/o Morton Werrings Rederi AS
> Strandveien 50 D
> 1366 Lysaker
> Norway
> Fax number: 47-67 51 84 70
>
> (ii) in the case of Charterers
> [＿＿＿＿＿＿]
>
> [＿＿＿＿＿＿]

[_____]

Fax number: [_____]."

(Werring Declaration, Ex. A). Additional Clause 55 confirms that Norfolk was simply a paper company, and that Zarepta did not intend Norfolk to exercise actual possession and control of the RACHEL B.

As Mr. Carr attests in his accompanying Declaration, during Stolthaven's attempts to resolve the claims approximately two months before the commencement of this action, no officer or employee of Norfolk came forward. (Carr Decl., ¶¶6-7). Nor did Hiltveit ever advise Mr. Carr that the RACHEL B was under a demise charter with Norfolk. (Carr Decl., Ex. B). The communications exchanged between Mr. Carr and Mr. Hiltveit demonstrate that Mr. Hiltveit represented he was acting on behalf of "the owners of the Rachel B" or "vessel interests," a phrase commonly known to include the registered owner of a vessel. (Carr Decl., ¶6; Ex. B).

Corroborating Stolthaven's position that Zarepta has maintained possession and control over the vessel's operations is an incident involving the RACHEL B's call at the Port of Falmouth, England, after departing U.S. waters subsequent to the incident at Stolthaven's Terminal in Houston. (Carr Decl. ¶¶ 8-9).

England's official "Central Office of Information" News Distribution Service (COI_NDS) reported that the RACHEL B had been detained by the British Marine and Coastguard Agency ("MCA") at the Port of Falmouth, England, in late April, early May 2008 during which the MCA had direct discussions with Zarepta concerning the incident and correction of the deficiencies. (Nowhere in the MCA report is Norfolk mentioned or for that matter Hiltveit). (Carr Decl., *id.*, Ex. C;).

The trade press confirmed that:

A MCA spokesman said the faults were mainly in the vessel's engine room and called it "an oily mess with corroded pipes, faulty and broken gauges and pumps."

He added after discussions **with the vessel owners, Zarepta Chemical KS in Norway**, and its flag state, they decided that the vessel would be allowed to remain in Falmouth for a short time. . . .

Tony Heslop, MCA area operation manager for the South West said: "The owners of the vessel have been informed of the decision to detain this vessel."

(Carr Decl., *id.* Ex. D; emphasis supplied).

Accordingly, Sotlhaven respectfully submits that Zarepta's motion should be denied *in toto*. Zarepta, given the express and clear terms and conditions of the bareboat charter party at issue, cannot, demonstrate that it divested itself of complete control and possession of the vessel to insulate itself from *in personam* liability.


## POINT III

### ALTERNATIVELY, STOLTHAVEN WOULD BE ENTITLED TO DISCOVER THE TRUE NATURE OF THE RELATIONSHIP BETWEEN ZAREPTA AND NORFOLK

Stolthaven respectfully submits that the foregoing establishes conclusively that Zarepta has not bareboat chartered the RACHEL B. Even if the issue were a close one (which it is not), Stolthaven would at a minimum be entitled to conduct full discovery regarding the purported relationship between Zarepta and Norfolk because the evidence submitted certainly casts doubt on the alleged demised nature of the parties' relationship. *See Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970) (discovery permitted regarding allegation that assets owned by one corporation should be considered an asset of a related corporation); *Rolls Royce Ind. Power (India) v. M.V. FRATZIS M*, 1996 A.M.C. 390, 392 (S.D.N.Y. 1995) (Haight, J.)

(discovery allowed on motion to vacate attachment to determine whether attachment reached assets of the named defendant).

Mr. Werring's self-serving and understandably biased declaration is flatly inconsistent with the other charter party clauses referred to above. He declares, for example "Zarepta has no corporate relationship with Norfolk" (Decl. at ¶ 8) but ignores entirely that Additional Clause 47(g) expressly reserves to Zarepta control over any decision by Norfolk to "change their business in any material respect." With respect to Mr. Werring, such an arrangement is hardly a touchstone indication of any real true autonomy vested in Norfolk as Charterer. In addition, the known facts surrounding the RACHEL B's detention by the MCA at the Port of Falmouth corroborate Zarepta's continued involvement in the operational management of the vessel.

The Second Circuit made clear in *Maryland Tuna* that self-serving statements without more should not permit a party that possesses crucial documentary evidence to defeat an attachment that *prima facie* is proper. Thus even if the proof that Zarepta had not truly demised the RACHEL was not definitive on a plain reading of the charter (which it is) , discovery should be allowed to test Mr. Werring's position concerning the relationship between Zarepta and Norfolk.

## POINT IV

### STOLTHAVEN'S ATTACHMENT OF ZAREPTA'S FUNDS WAS NOT WRONGFUL OR AN ABUSE OF PROCESS

Since, as shown above, Zarepta does not enjoy insulation from liability as a bareboat owner of the RACHEL B, Zarepta's claims of "wrongful attachment" or "abuse of process" are without merit. If anything (and though undersigned counsel do not urge the Court to do so given a their high respect for opposing counsel), scrutiny might more fairly be directed at the degree to

which the contents of the Zarepta charter party were fully reviewed and considered prior to filing of the motion.

In any event, it is well-settled law that a claim for wrongful arrest or attachment can only be established upon a showing of bad faith, malice or gross negligence. *Result Shipping Co. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 402 n.5 (2d Cir. 1995); *Frontera Fruit Co., Inc. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937); *Furness Withy (Chartering), Inc. v. World Energy Systems Assocs., Inc.*, 772 F.2d 802, 808 (11th Cir. 1985); *OGI Ocean Gate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd.*, No. 06-9441, 2007 U.S. Dist. LEXIS 74180, *7 n.3 (S.D.N.Y. Oct. 4, 2007); *THE SWEEDISH BARK ADOLPH*, 5 F. 114 (S.D.N.Y. 1880). The burden is on the party pressing the claim to demonstrate that the arresting party acted with bad faith, malice or gross negligence. *Thypin Steel Co. v. Certain Bills of Lading Issued for a Cargo of 3017 Metric Tons More or Less of Hot Rolled Steel Plates*, 2001 A.M.C. 2832 (S.D.N.Y. 2001). This showing is an essential element to a claim for wrongful arrest or attachment. *Frontera Fruit*, 91 F.2d at 297 ("The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice or gross negligence of the offending party").

No such showing exists here. Zarepta asserts no fact whatsoever even purporting to demonstrate bad faith, malice or gross negligence on the part of Stolthaven. As a matter of law, therefore, Zarepta cannot meet its high burden of proof that the challenged attachment was wrongful. Indeed, because it has no such facts, and because all it can do is attempt to deflect this Court's attention from the impartial evidence, Zarepta merely speculates that Stolhaven should have known of the existence of the document that is purported to be a bareboat charter. As the Carr Declaration establishes however, Stolthaven had no such knowledge of any bareboat charter, purported or otherwise, until Zarepta appeared and raised the issue for the first time in

these proceedings.  Although Mr. Carr communicated with Carl G. Hiltveit, representing the

vessel manager Hiltveit, approximately two months before Stolthaven commenced the instant

Rule B action against Zarepta, Mr. Hiltveit never during their exchanges advised Mr. Carr of the

existence of any bareboat charter party with the Zarepta.  On the contrary, as the documentary

evidence shows, Mr. Hiltveit represented to be acting on behalf of "the owners of the Rachel B"

or "vessel interests."  (Carr Decl., ¶6, Ex. B).  Crucially, no officer or employee of Norfolk, the

alleged bareboat charterer, ever communicated with Mr. Carr.     (Carr Decl., ¶6, Ex. B).  Quite

apart from the fact that Zarepta has no case on the merits of its claim to bareboat status, the

communications between Mr. Carr and Mr. Hiltveit in the weeks prior to Stolthaven's Rule B

application to the Court puts to rest the meritless and factually unsupported accusations of

Zarepta.[2]

---

[2] Fully aware that is claim for wrongful attachment and abuse of process is baseless, Zarepta attempts to mislead the Court by arguing that Stolthaven referred to Hiltveit as "Owners" in Exhibits B and D attached to the Complaint in an attempt to deceive the Court. First, the Verified Complaint clearly identifies the identities of the Defendants:

> 5. At all relevant times hereto, Defendant HILTVEIT ASSOCIATES, INC. ("Hiltveit") is a New York corporation, with an office and principal place of business at 150 Motor Parkway, Hauppauge, NY, 11788, and **was, and still is, the manager** of the M/T RACHEL B.

> 6.  At all relevant times hereto, Defendant ZAREPTA CHEMICAL KS ("Zarepta") is a corporation organized and existing under the law of a foreign country, with a principal place of business at Grev Wedels Plass 9 c/o Fearnley Finans AS 0151 Oslo, Norway, and **was, and still is, the registered owner** of the M/T RACHEL B.

> **III.    FACTS AND CLAIM**

> 7.     Pursuant to maritime contracts **with the Vessel's owner, Zarepta, and its manager, Hiltveit,** Plaintiff provided terminal services to the RACHEL B beginning on March 4, 2008.  While berthed at the Terminal's dock in the Port of Houston, the Vessel was detained by the United States Coast Guard such that it did not timely vacate the berth thereby preventing the Terminal from serving its next vessel. The Vessel did not vacate the berth until approximately 2200 hours on March 7, 2008.

Second, as stated above, the communications (including Exhibits B and D to the Complaint) between Mr. Carr and Mr. Hiltveit demonstrate that Hiltveit represented to be acting on behalf of "the owners of the Rachel B" or "vessel interests." Needless tosay, Zarepta concedes that it is the vessel's registered owner, and because it has retained control over the technical management operation of the vessel, it fully knows Hiltveit's status as the vessel's manager.

As if the Carr-Hiltveit exchange were not enough, the COI-NDS and information disseminated in the industry press concerning the detention of the RACHEL B by the British MCA at the Port of Falmouth demonstrates that Zarepta, not Norfolk (or Hiltveit for that matter), were directly involved with the vessel repairs and the correction of the deficiencies uncovered by the MCA inspection.    Accordingly, Zarepta's argument that Stolhaven's attachment was wrongful or an abuse of process is baseless and shoul be rejected by the Court.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny the Defendant's motion in all respects and grant such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
        June 13, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiffs

By: _____
    Don P. Murnane, Jr. (DM 3639)
    Manuel A. Molina (MM 1017)
    80 Pine Street
    New York, NY  10005
    (212) 425-1900
    (212) 425-1901 fax