249-08/DPM/MAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
STOLTHAVEN HOUSTON INC.,                              08 CIV. 4327 (RPP)

                        Plaintiff,
-against-

RACHEL B, its engines, tackle apparel, etc., *in rem*, and
HILTVEIT ASSOCIATES, INC. and ZAREPTA
CHEMICAL KS, *in personam*,

                        Defendants.
------------------------------------------------------------------x


**PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO VACATE THIS COURT'S**
<u>**MARITIME ATTACHMENT ORDER**</u>


                                              FREEHILL HOGAN & MAHAR, LLP
                                              Attorneys for Plaintiff
                                              80 Pine Street, 24th floor
                                              New York, New York 10005
                                              (212) 425-1900

Don P. Murnane
Manuel A. Molina
 Of Counsel

NYDOCS1/306633.1

Plaintiff STOLTHAVEN HOUSTON INC. ("Plaintiff" or "Stolthaven"), by and through its counsel, Freehill Hogan & Mahar, LLP, respectfully submits this memorandum of law in further opposition to the motion of Defendant ZAREPTA CHEMICAL KS ("Defendant" or "Zarepta") to vacate the order of attachment.

## PRELIMINARY STATEMENT

Zarepta's belated submission of a General Management Agreement and an Agreement for Shipmanagement ("Technical Agreement") demonstrates that Zarepta has unavailingly attempted to insulate itself from personal liability behind a paper limited partnership in the Marshall Islands. The General Management Agreement between Norfolk and Hiltveit is not signed by Norfolk but by Hiltveit wearing the "hat" for Norfolk as well as for itself. Further, the so-called Technical Agreement identifies yet another entity, "Carl Olsens Tankerederi A/S," as the vessel's "Technical Manager." Tellingly, the Technical Agreement was never executed by Carl Olsens and was only signed by Hiltveit. As evidenced by Clause 47 of the Zarepta-Norfolk charter party, Zarepta has retained operational management and control over the vessel. The fact that neither Norfolk, the purported bareboat charterer, nor Carl Olsens, the purported Technical Manager, are anywhere to be found managing and operating the vessel further buttresses this position. A registered owner such as Zarepta is not entitled to bareboat owner status where it retains a say in the control and operation of the vessel. Here, Norfolk is a mere legal fiction cleverly constructed in an attempt to insulate Zarepta from *in personam* liability. Norfolk should not be viewed as a true bareboat charterer on the facts of this case, and Zarepta should not be permitted to avoid *in personam* liability.

ARGUMENT

POINT I

THIS SUR-REPLY IS APPROPRIATE BECAUSE
THE REPLY MEMORANDUM RAISED NEW ISSUES

The law of this circuit is clear that a party is entitled to submit a sur-reply in response to new arguments, evidence or case law introduced in the moving party's reply papers. "Where new evidence is presented in a party's reply brief or affidavit … **the district court should** permit the nonmoving party to respond to the new matters prior to the disposition of the motion." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F. Supp. 693, 708 (S.D.N.Y. 1996) (quoting *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991) *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992)) (emphasis supplied). A sur-reply should be permitted when, as here, the moving party attempts to "spring upon [the opposing party] new reasons for" granting the relief requested in the motion. *Id.*

There is no dispute that Zarepta provided its Rule 44.1 notice of the application of foreign law for the first time in its reply papers, just four hours prior to the order to show cause hearing on June 16, 2008. This ground alone justifies the filing of this sur-reply. Zarepta also raised the additional new argument that whether or not the charter party at issue is described as a bareboat charter or time charter party is irrelevant, since Zarepta is not in privity of contract with Stolthaven. This new legal ground provides further justification for filing this sur-reply. As will be discussed more fully below, both these arguments are without merit. Zarepta's failure to argue the application of Norwegian law in its initial motion papers is fatal and constitutes a waiver. In any event, as more fully set forth below, under Norwegian law, it is United States law that governs Zarepta's *in personam* liability to Stolthaven. Further, under both Norwegian and American law, a vessel owner in Zarepta's situation may, in any event, be held directly liable *in personam* if the claimed loss stem from the owner's failure

to maintain the vessel's seaworthiness throughout the charter party period, regardless of whether the claim against the vessel owner sounds in contract or tort.

For the reasons set forth herein and for those established in Plaintiff's responsive papers, Defendant's motion should be denied in all respects.

## POINT II

### ZAREPTA' FAILURE TO RAISE NORWEGIAN LAW IN ITS INITIAL MOTION PAPERS CONSTITUES A WAIVER

It is clear that, under Rule 44.1 of the Federal Rules of Civil Procedure, the party who intends to raise an issue under foreign law must provide "reasonable written notice" to the other side. *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545 (E.D.N.Y. 1998). The purpose of the Rule is "to avoid unfair surprise either to the opposing party or to the court." *Id.* (citation omitted). Here, Zarepta did not provide written notice that it intended to raise an issue concerning Norwegian law until it filed its reply papers, just 4 hours prior to the hearing. This notice was improper under Rule 44.1 and Zarepta's failure should be deemed a waiver of its Norwegian law argument. *Id.* (rejecting application of Swiss law because party raised issue for first time in its reply papers, thereby rendering notice insufficient).

## POINT III

### UNDER U.S. LAW, STOLTHAVEN HAS A VALID ADMIRALTY CLAIM

It is well-settled that whether or not Stolthaven has asserted a valid *prima facie* maritime claim for purposes of a Rule B writ of attachment depends upon the substantive law of the **contract** upon which Stolthaven bases its claim against Zarepta. *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007); *T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.*, 415 F. Supp. 2d 310 (S.D.N.Y. 2006). Here, it undisputed that Stolthaven's claim against Zarepta is based upon Zarepta's breach of Stolthaven's Marine Tariff in that Zarepta, as the vessel's registered owner,

3

failed to pay wharfage fees due and owing to Stolthaven when the vessel was detained by the US Coast Guard at Stolthaven's terminal.

As the United States Supreme Court held 130 years ago:

> Compensation for wharfage may be claimed upon **an express or implied contract**, according to the circumstances. Where a price is agreed upon for the use of the wharf, the contract furnishes the measure of compensation; **and when the wharf is used without any such agreement, the contract is implied**, and the proprietor is entitled to recover what is just and reasonable for the use of his property and the benefit conferred.

*Ex Parte Easton*, 95 U.S. 68, 73 (1877) (emphasis supplied). An express or implied wharfage contract is a maritime contract within the admiralty jurisdiction of the federal courts. 95 U.S. at 77.

## POINT IV

### STOLTHAVEN'S CLAIM IS GOVERNED BY U.S., NOT NORWEGIAN LAW

Zarepta's argument at the June 16, 2008 hearing that Stolthaven bears the onus of proof that, under Norwegian law, it has an admiralty claim is utterly without merit. Stolthaven's claim is **not** based on the the Zarepta-Norfolk charter and it is Zarepta that has belatedly interposed the application of Norwegian law.

In addition, Zarepta's last resort invocation of Norwegian law also fails because, under applicable choice of law principles, it is the law of the United States that this Court must apply to determine the validity of Stolthaven's Rule B claim. *Lauritzen v. Larsen*, 345 U.S. 571 (1953).[1] Indeed, since Stolthaven was not a party to the Zarepta-Norfolk agreement, Norwegian law is inapplicable. *Arochem Corp. v. Wilomi, Inc.*, 962 F.2d 496 (5th Cir. 1992); *Gulf Trading Gulf Trading & Transp. Co. v. Vessel Hoegh Shield*, 658 F.2d 363 (5th Cir. 1981).

---

[1] In *Lauritzen*, the Supreme Court articulated several factors for a court to consider in its choice-of-law analysis: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) inaccessibility of the foreign forum; (7) law of the forum. *See also Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959); and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970). The weight to be given to each factor varies from case to case and the list is not an exhaustive one. *Rhoditis*, 398 U.S. at 308-09. Although *Lauritzen* dealt with choice of law in maritime torts, its broad choice of law principles are not limited to maritime torts but were "intended to guide courts in the application of maritime law generally." *State Trading Corp. of India, Ltd. v. Assuranceforening Skuld*, 921 F.2d 409, 416 (2d Cir. 1990).

4

For example, in *Arochem*, the Fifth Circuit found that the District Court properly applied American law in an action by a non-party oil cargo purchaser against a vessel owner claiming that the owner had unlawfully arrested the cargo in asserting a maritime lien for freight under a voyage charter party to which plaintiff was not a signatory. The Court held that the presence of a clause requiring the application of English law in the charter party was immaterial, as plaintiff was not a signatory to that agreement. Applying the *Lauritzen* choice of law factors and the Restatement (Second) of Conflicts of Law §6, the Fifth Circuit ruled that American law governed the parties' commercial dispute:

> Arochem's claim is for wrongful arrest, and the arrest was administered by a United States Marshal in a United States port. Arochem is a United States company and Wilomi [Owner] has a place of business and a general agent in the United States. With these contacts between the transaction and the United States, it is consistent and rational to apply American law. Although the contract was formed in England, it is illogical to argue England has as great an interest as the United States in protecting an American purchaser from an unlawful arrest of cargo on an American vessel in an American port. The district court, therefore, properly applied American law.

962 F.2d at 499. *See also Gulf Trading*, 658 F.2d 363.

Similarly here, consideration of the *Lauritzen* factors leads to the application of U.S. law:

- The Marine Tariff, which is the contract upon which Stolthaven bases its claim against Zarepta, was issued in Texas.

- The vessel berthed at Stolthaven 's Terminal in Texas.

- Zarepta breached its contract with Stolthaven in Texas.

- Stolthaven is incorporated in the State of Texas.

- The United States Coast Guard detained the vessel because of American law violations.

- The Order of Attachment was issued by a New York Federal Court and Zarepta's assets were restrained in New York.

It is clear that the United States has a greater interest in protecting an American company that provides berthing facilities in Texas to companies worldwide, especially when the incident that led to the present claim involved violations of U.S. laws and resulted in the detention of the vessel by the

5

United States government. The fact that the Zarepta-Norfolk charter party may have been negotiated in Norway or that it contains a law and jurisdiction clause calling for the application of Norwegian law is immaterial to the conflicts analysis, as Stolthaven is not a party to the charter. *Arochem*, 962 F.2d at 499 ("This factor [that the Charter agreement in *Arochem* was negotiated in London] is rendered nugatory, however, because [Plaintiff] here claiming injury was not a party to the charter agreement").

In light of the above, Stolthaven respectfully submits that it has satisfied its Rule E(4)(f) burden in that it has asserted a valid admiralty claim under U.S. law. Accordingly, Zarepta's eleventh-hour invocation of Norwegian law must be rejected by the Court.

## POINT V

### ALTERNATIVELY, UNDER NORWEGIAN LAW ZAREPTA IS LIABLE *IN PERSONAM* TO STOLTHAVEN

Zarepta's eleventh-hour Norwegian law argument is a red herring and an unavailing attempt to deflect the Court's attention from the fact that, for purposes of a Rule E(4)(f) hearing, Stolthaven has asserted a valid *prima facie* admiralty claim under U.S. law. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006). In any event, the application of Norwegian law demonstrates that: (a) U.S. law governs the issue of whether Zarepta is liable to Stolthaven; and (b) Zarepta, as the vessel's registered owner, may be held liable *in personam*. Accordingly, even under Norwegian law Zarepta has not met its burden of proof that it can escape personal liability.

*A. Norwegian law dictates the application of U.S. law to the Stolthaven-Zarepta dispute*

The Declaration of Gaute Gjeltsen, Stolthaven's Norwegian law expert, demonstrates that under Norwegian conflict of law rules, **United States law** will govern the issue of whether Zarepta is liable to Stolthaven under the Marine Tariff. (Declaration of Gaute Gjeltsen, dated June 19, 2008 ("Gjeltsen Decl."), ¶8). In point of fact, under Norwegian law, Clause 56 of the Zarepta-Norfolk charter party, which calls for the application of Norwegian law, is immaterial to the adjudication of

6

Zarepta's liability to Stolthaven. Clause 56 simply governs Zarepta's and Norfolk's "internal division of liability" and cannot be imposed upon third parties outside that contract. (Gjetsen Decl., ¶9). In other words, this Court decides whether or not Zarepta is liable to Stolthaven under U.S. law, and the Norwegian Court decides how the loss will be allocated between Zarepta and Norfolk on the basis of their charter party agreement, *i.e.* whether Zarepta alone, or Norfolk alone, or both jointly, bear the loss.

Accordingly, as Norwegian law requires application of U.S. law, Zarepta's foreign law argument must be rejected by the Court.

### B. *Under Norwegian law Zarepta is liable in personam to Stolthaven*

Mr. Gjeltsen attests that under Sections 372 and 384 of the Norwegian Maritime Code, a vessel owner is required, respectively, to exercise due diligence in rendering the vessel seaworthy at the commencement of the charter party and in ensuring that the vessel remains seaworthy throughout the charter party period. (Gjeltsen Decl., ¶14). As a result, the ship-owner owes a duty of care to third persons that the owner knows will be affected by the operation of the vessel, such as terminal operators like Stolthaven here, to ensure that the vessel remains seaworthy at all times. (Gjeltsen Decl., ¶14). Under Norwegian law, therefore, any loss or damage to a third party, whether based on contract or tort, which stems from the vessel owner's breach of that duty of care subjects the vessel owner to *in personam* liability. (Gjeltsen Decl., ¶14). Indeed, a third party may commence an *in personam* action directly against the registered owner (in contract or tort) for its failure to maintain the vessel seaworthy throughout the charter party period. (Gjeltsen Decl., ¶¶14, 16).

Accordingly, contrary to Zarepta's position, Stolthaven has an *in personam* claim against Zarepta on the basis of the unseaworthiness of the RACHEL B that is recognizable under Norwegian law.

# POINT VI

## ZAREPTA CANNOT ESCAPE PERSONAL LIABILITY BECAUSE THE RACHEL B WAS UNSEAWORTHY

Zarepta, again switching gears, has belatedly argued that even if the Zarepta-Norfolk charter is found to be a time charter party, Zarepta cannot be found personally liable because there is no privity between Stolthaven and Zarepta. This argument lacks merit.

Zarepta ignores one of the bedrock principles of U.S. admiralty law that, under a time charter contract, an owner has a continuing duty to maintain the seaworthiness of its vessel. *Nichimen Company, Inc. v. Seaboard Shipping Co., Ltd.*, 462 F.2d 319, 331-332 (2d Cir. 1972) ("under [a] time charter, [an] owner bears continuing responsibility for the seaworthiness of the vessel…[I]n performance of this responsibility, the Captain acts on behalf of the owner who 'runs and mans the ship.'"). *See also John Michael Rose v. Chaplin Marine Tranport, Inc.*, 895 F. Supp. 856, 861 (S.D.W.Va. 1995) *citing Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 792 (5th Cir. 1990) ("Under the traditional time-charter agreement, the time charterer directs the vessel's commercial activities…The time charterer's duties are different from the vessel owner's duties. The vessel owner remains responsible for the seaworthiness of the vessel…").

The Second Circuit has noted that term "seaworthy" has no absolute meaning, but varies with the circumstances and exceptional features of each case. *Mobil Shipping and Transportation Co. v. Wonsild Liquid Carriers*, 190 F.3d 64, 69 (2d Cir. 1999). *See also The Silvia*, 171 U.S. 462, 464, 43 L. Ed. 241, 19 S. Ct. 7 (1898) (a vessel is seaworthy when it "is reasonably fit to carry the cargo which she has undertaken to transport"; *GTS Indus. S.A. v. S/S "Havtjeld"*, 68 F.3d 1531, 1535 (2d Cir. 1995) ("Seaworthiness is defined as 'the ability of a vessel adequately to perform the particular services required of her on the voyage she undertakes.'") *Nichimen Co.*, 462 F.2d at 332 ("One essential aspect of seaworthiness is that the vessel must be fit for the purpose intended under the charter party."); *R.T.*

8

*Jones Lumber Co. v. Roen Steamship Co.*, 270 F.2d 456, 458 (2d Cir. 1959) (seaworthiness "means not only the reasonable ability of a ship to meet the anticipated conditions of the sea but its ability to carry safely the cargo which it has accepted for shipment").

The Second Circuit has stated that, in evaluating a vessel's seaworthiness (and hence its ability to perform its intended duties), the cargo's hazardous nature should be taken into account: "Common sense counsels that 'safe' transport encompasses not only the vessel's ability to protect the cargo's integrity, but also its ability to transport the cargo without threatening the environment." *Mobil Shipping*, 190 F.3d at 69.

It is not disputed that the RACHEL B is "an Oil and Chemical Carrier," (Werring Decl., Exhibit A (bareboat charter party, Box 10), and hence carries hazardous cargoes such as oil or liquid chemicals. Moreover, it is not disputed that the United States Coast government detained Zarepta's vessel because Coast Guard inspectors uncovered a series of vessel safety deficiencies and violations relating to the vessel's emergency fire fighting equipment. These violations were so serious that the U.S. Coast Guard stopped the vessel's loading operations and prohibited the vessel from leaving the berth. These violations and U.S. Coast Guard actions facially demonstrate that the vessel was not seaworthy at that it was this unseaworthiness that led to the vessel's occupation of Stolthaven berth beyond its allotted time, resulting in additional layberth expenses, which remain unpaid.

It is equally undisputed that the RACHEL B was promptly detained again by authorities in England shortly after its departure from the Stolthaven terminal. In late April, early May 2008, the United Kingdom's Marine and Coast Guard Agency detained the RACHEL B on a number of ongoing and numerous "International Safety Management" violations and breaches while the vessel called at Falmouth. (Declaration of Dan Carr, ¶8, Exs. C and D). This incident also suggests that the RACHEL B remained unseaworthy.

B remained unseaworthy.

Pursuant to Clause 47(d) of the Zarepta-Norfolk charter, Zarepta retained control over the approval of the technical management agreement, the decisions to dismiss the technical manager as well as any alterations that would be made to the technical management agreement. That agreement specifically covers the "arrangement for and supervision of the daily operation [and] maintenance of the Vessel." Crucially, Zarepta also retained the authority to approve if, and how, a $500,000 fund would be utilized for vessel operations. (Clause 47(h)(dd)). Thus, Zarepta has maintained control over decisions that have a direct impact on the maintenance and operation of the vessel, which is contrary to the absolute and complete relinquishment of such control by a bareboat owner.

At this time, in assessing the validity of Stolthaven's claim, this Court may not adjudicate the ultimate merits of the dispute, and must only determine whether Stolthaven has a colorable claim against Zarepta so that Plaintiff may attach Zarepta's funds to secure the claim in the event of a judgment. Stolthaven respectfully submits that the evidence demonstrates that Zarepta may be facially liable *in personam* to Stolthaven. The attachment must therefore be maintained and the action should continue to discovery and ultimately trial of all issues concerning liability.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion, direct that the order of attachment and/or attachments remain in place, and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 20, 2008

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Plaintiff
STOLTHAVEN HOUSTON INC.

By: _____
Don P. Murnane, Jr. (DM 3639)
Manuel A. Molina (MM 1017)

10