UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                          :

STOLTHAVEN HOUSTON, INC.,        :

                         :       08 Civ. 4327 (RPP)

              Plaintiff,   :

                         :

      v.                 :

                         :     **DECLARATION OF**

RACHEL B, its engines, tackle apparel, etc. *in rem*,  :

And HILTVEIT ASSOCIATES, INC. and    :     **GAUTE GJELSTEN IN**

ZAREPTA CHEMICAL KS, *in personam*,   :   **OPPOSITION TO MOTION**

                         :   **TO VACATE ATTACHMENT**

            Defendants.   :

                         :
-------------------------------------------------------------x


# **Affidavit**


**Introduction**

1.  I have been a member of the Norwegian Bar Association since 1998 and am a partner
    in the Norwegian law firm Wikborg, Rein & Co, with its head office in Oslo, Norway.

2.  I give this opinion at the request of Stolt-Nielsen USA, Inc. for the use in the
    proceedings pending before the United States District Court for the Southern District
    of New York between Stolthaven Houston, Inc. and Rachel B, its engines, tackle
    apparel, etc. *in rem*, and Hiltveit Associates, Inc., and Zarepta Chemical KS *in
    personam*. I confirm that I am capable of providing such an opinion under Norwegian
    law.

3.  The following facts were provided for my consideration: The vessel, the Rachel B,
    was in March 2008 detained at Stolthaven's berth in Houston by the United States
    Coast Guard because of deficiencies with the emergency fire equipment and

prohibited from leaving the berth. The vessel had called at Stolthaven pursuant to the Stolthaven Marine Tariff terms dated April 1, 2007. The terms paragraph 2 on page 3 provided for layberth charges amounting to $ 5,000 per hour in situations where a vessel failed to vacate the berth within the time provided in connection with loading or discharge of cargo. As a result of the detention by the Coast Guard, the Rachel B incurred layberth charges totalling $ 269,754.38.

4.  As the layberth charges remained unpaid, Stolthaven sought an attachment of funds under the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims, Rule B. An amount of $ 318,310.17 was attached in relation to a wire transfer referring to invoice #V-1831 from BTMU Capital Corporation, Bank of Tokyo-Mitsubishi UFJ, to Zarepta dated May 23, 2008 of $ 491,138.69. This amount was instructed paid to BTMU Capital Corporation. The defendant has now moved in order to vacate the attachment.

5.  The following documents were provided for my consideration;
    a.  Defendant's Memorandum in Support of Motion to Vacate this Court's Maritime Attachment Order of June 11, 2008.
    b.  Declaration of Mr. Morten E. Werring in Support of Motion to Vacate Attachment of June 11, 2008 with exhibits.
    c.  Declaration of Daniel Carr, Esq – In opposition to motion to vacate order of attachment of June 13, 2008 with exhibits.
    d.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate this Court's Maritime Attachment Order of June 13, 2008.
    e.  Defendant's Reply Memorandum in Support of Motion to Vacate  this Court's Maritime Attachment Order of June 16, 2008.
    f.  Declaration of Mr. Morten Werring of June 16, 2008
    g.  Declaration of Knut Erik Westad in Support of Motion to Vacate Attachment of June 16, 2008.
    h.  Defendant's letter to the Court of June 17, 2008 including Agreement for Ship Management dated May 27, 2004, the General Management Agreement dated May 27, 2004 and the BARECON 89 form.

6. For the purpose of the above-mentioned proceedings, I have been asked to opine on (a) whether Norwegian law governs the dispute and (b) the characterisation of the contract between Zarepta Chemicals KS and Norfolk L.P. under Norwegian law and the extent Zarepta Chemicals KS will be liable *in personam*. My opinion on these issues is as follows:

## The Governing Law of the Dispute

7. We refer to the facts as described above under 2, 3 and 4.

8. Pursuant to Norwegian conflict of laws rules, the law of the court where the case is heard ("*lex fori*"), i.e. the United States District Court for the Southern District of New York, will exclusively characterise the matter in question and decide applicable law for the substantive matter ("*lex causae*"). However, *lex causae* according to other jurisdictions' choice of laws rules may be of guidance. Pursuant to Norwegian rules on choice of laws, US law would govern the issue in hand regardless of whether the claim is characterised as a claim in contract or tort. If the claim is characterised as a claim in tort, the law of the place of the tort, i.e. where the incident occurred, would apply ("*lex loci delicti*"). If the issue in hand is characterised as a claim in contract (i.e. expressed or implied contract), the contract will be govern by the law of the country with which it is most closely connected. In my opinion both the mentioned doctrines would result in US law governing the matter.

9. Thus, the law chosen by the registered owner of the vessel and the bareboat charterer in the charter party will only regulate their internal division of liability, which in the current matter will be governed by Norwegian law, cf. the charter clause 56.

## The Characterisation of the Contract

10. The Norwegian Professor dr. juris Thor Falkanger in Bareboat Chartering – Legal studies in relation to the specific issues concerning Bareboat chartering, (only in Norwegian, with the original title "Leie av skib- Rettslige studier i bare-boat certeparties problemer") from 1969 discusses the characterisation of a charter party and to which extent the registered owner can be held liable *in personam*.

11. Under Norwegian law the characterisation of the contract would not depend on the same strict division between a time charter and a bareboat charter as established in Guzman v. Pichirilo, 1962 AMC 1142 SCt. The characterisation of a charter party depends on an assessment of the contract as a whole where the parties' intentions are given significant weight, Falkanger at p. 60 and 63. A Norwegian Judge is therefore likely to look more into the specific terms of the contract, despite that the contract based on its form appears as a bareboat charter. Literature provides support for a presumption of considering the contract as a regular charter rather than a bareboat charter. The distinction between a bareboat charter and a time charter party is therefore of less significance under Norwegian law. When considering liability toward a third party not party to the charter, a Norwegian judge will view the merits as a whole and decide on one of three options: 1) that the registered owner is liable alone, 2) that the charterer is liable alone, or 3) joint liability between the registered owner and the charterer. If the judge is in doubt as to which of the parties who is liable, joint and several liability is the likely outcome. What constitutes a reasonable outcome would be one of the essential elements which influence the judge's decision.

**Claim *in Personam***

12. There are very few reported Norwegian cases dealing with the liability of a registered owner regarding loss incurred by a party arising out of a contract. Under Norwegian law, a plaintiff will as a starting point have a claim *in personam* against the person who is liable for the plaintiff's loss, Falkanger page 466. The subject of the liability for the plaintiff's loss depends on the basis for the action. If the action is founded in contract, the party which appears in the contract, e.g. by signing the contract or by its logo printed on the form, is likely to be found liable, see Falkanger p. 472. The same solution will apply to an implied contract.

13. In order for the registered owner to be liable *in personam* without being express part to the contract with the plaintiff, a requirement is that the charterer is considered a party to the contract in which the claim is based upon. The same will apply where a contract is implied between the charterer and the plaintiff. The normal presumption is that the registered owner is not liable if he is not liable for the loss under the contract, see Falkanger page 485.

14. Liability *in personam* for the registered owner may nonetheless be established where the third party's loss was caused due to the unseaworthiness of the vessel which existed when the vessel was delivered, see Falkanger page 485. Pursuant to the Norwegian Maritime Code of 1994 section 372, the owner is obliged to exercise due diligence in rendering the vessel seaworthy at the delivery to the charter. Moreover, pursuant to section 384, the owner is also responsible for ensuring that the vessel remains seaworthy throughout the charter period. The owner's liability towards a third party plaintiff may be based on a duty of care towards persons whom the registered owner must know will be affected by the operation of the vessel, such as e.g operators of ports where the vessel will berth, Id at 487. While the duty of care towards the charterer will depend on the nature of the contract, the duty of care towards a third party plaintiff will depend on a regular duty of care consideration, Falkanger page 488. An action in *in personam* may also be based upon a direct recovery against the registered owner.

15. In an action in tort, the starting point is that the user of the vessel who is in control of the vessel is the subject of liability for damage or loss which is caused by negligent actions, Falkanger p. 527. However, the registered owner can be liable *in personam* where the registered owner or his servants have been negligent, e.g. by the negligence in rendering the vessel seaworthy, Falkanger page 538. The duty of care which has to be shown may differ from the care that has to be exercised in relation to the charterer, *Id* at 538. Moreover, the registered owner may be liable without fault, if the loss is a result of the vessel's unseaworthiness. Whether the unseaworthiness was present at the delivery or not may be irrelevant, Falkanger at page 538.

**Conclusion**

16. Thus, the characterisation of the charter under Norwegian law will depend on the whole of the contract, but the registered owner may in any event be liable *in personam* for loss caused by unseaworthiness of the vessel, independent of whether the action is in contract or in tort.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Oslo, 19 June 2008

Gaute Gjelsten