William J. Honan
Michael J. Frevola
Francesca Morris
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York  10007-3189
(212) 513-3200
E-mail:  bill.honan@hklaw.com
        michael.frevola@hklaw.com
        francesca.morris@hklaw.com

ATTORNEYS FOR DEFENDANT
ZAREPTA CHEMICAL KS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                          :
STOLTHAVEN HOUSTON, INC.,                                 :
                                                          :
                                    Plaintiff,            :
                                                          :
              v.                                          :
                                                          :        08 Civ. 4327 (RPP)
                                                          :
RACHEL B, its engines, tackle, apparel, etc., *in rem*,   :
and HILTVEIT ASSOCIATES, INC. and                         :
ZAREPTA CHEMICAL KS, *in personam*,                       :
                                                          :
                                    Defendant.            :
                                                          :
------------------------------------------------------------------------x

**DEFENDANT'S SUR-REPLY MEMORANDUM IN SUPPORT OF
MOTION TO VACATE THIS COURT'S MARITIME ATTACHMENT ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT  ..........................................................................................................................1

POINT I
PLAINTIFF HAS THE BURDEN TO SHOW THAT THE ATTACHMENT WAS
PROPERLY OBTAINED.........................................................................................................1

POINT II
U.S. LAW APPLIES.................................................................................................................2

POINT III
UNDER APPLICABLE NORWEGIAN AND U.S. LAW THE BAREBOAT CHARTER
IS A TRUE BAREBOAT CHARTER .......................................................................................2

POINT IV
ZAREPTA DID NOT WAIVE THE APPLICABILITY OF FOREIGN LAW...............................4

POINT V
STOLTHAVEN HAS NO VALID PRIMA *FACIE* MARITIME CLAIM UNDER *EX
PARTE EASTON*......................................................................................................................5

POINT VI
STOLTHAVEN'S UNSUPPORTED ALLEGATIONS REGARDING ZAREPTA'S
INDEPENDENCE ARE WITHOUT MERIT ...........................................................................7

POINT VII
STOLTHAVEN HAS NO VALID *PRIMA FACIE* ADMIRALTY CLAIM AGAINST
ZAREPTA FOR UNSEAWORTHINESS...................................................................................8

CONCLUSION...........................................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
  460 F.3d 434 (2d Cir. 2006)..................................................................................1

*Belcher Co. of Alabama v. M/V Maratha Mariner*,
  724 F.2d 1161 (5th Cir. 1984) ...............................................................................7

*Canella v. Lykes Bros.*,
  174 F.2d 794 (2d Cir), *cert denied*, 338 U.S. 859 (1949).......................................9

*Continental Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960)................................................................................................2

*Dant & Russell, Inc. v. Dillengham Tug & Barge Corp.*,
  877 F.2d 1404 (9th Cir. 1989) ...............................................................................9

*Demsey & Assocs v. S.S. Sea Star*,
  461 F.2d 1009 (2d Cir. 1972)................................................................................7

*Ex Parte Easton*,
  95 U.S. 68 (1877)..............................................................................................5, 6

*Lightfoot v. Union Carbide Corp.*,
  110 F.3d 898 (2d Cir. 1997)..................................................................................7

*Local 875 I.B.T. Pension Fund v. Pollack*,
  992 F. Supp. 545 (E.D.N.Y. 1998) ........................................................................5

*Maritrend, Inc. v. M/V Sebes*,
  No. 96-3140, 1997 U.S. Dist. LEXIS 23594 (E.D. La. 1997).................................2

*Moore v. Philips Petroleum Co.*,
  912 F.2d 789 (5th Cir. 1990) .................................................................................9

*Motel 6 Sec. Litigation*,
  No. 93 Civ. 2183, 93 Civ. 2866, 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997) ..........7

*Nichimen Co., Inc. v. Seaboard Shipping Co.*,
  462 F.2d 319 (2d Cir. 1972)...............................................................................8, 9

*Redtail Leasing, Inc. v. Bellezza*,
  No. 95 Civ. 5191, 1997 WL. 603496 (S.D.N.Y. Sept. 30, 1997).............................7

*Robins Drydock & Repair Co. v. Flint*,
  275 U.S. 303 (1927)........................................................................................................10

*Rose v. Chaplin Marine Transport, Inc.*,
  895 F. Supp. 856 (S.D. W. Va. 1995)...............................................................................9

*Sampson Madeja v. Olympic Packers, LLC*,
  310 F.3d 628 (9th Cir. 2002) ............................................................................................2

*Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*,
  478 F. Supp. 2d 532 (S.D.N.Y. 2007)...........................................................................2, 5

*Tidewater Barges Lines Inc. v. The Port of Lewiston*, 03-C 2005 U.S. Dist. LEXIS
  41947, 2006 AMC 542 (D.C. Ore. Oct. 21, 2005) ...........................................................3

*U.S. v. Shea*,
  152 U.S. 178 (1894).........................................................................................................3

## OTHER AUTHORITIES

Mark Davis, *Bareboat Charters* (2d ed. 2005) ......................................................................4

Grant Gilmore & Charles L. Black Jr., *The Law of Admiralty* (2 ed. 1975)...........................5

Thomas J. Schoenbaum, *Admiralty & Maritime Law* (4 ed. 2004) ......................................10

Michael Wilford, Terence Coghlin & John D. Kimball, *Time Charters* (5th ed. 2003) ...............6

## PRELIMINARY STATEMENT

In accordance with this Court's June 23, 2008 memo endorsement, Zarepta Chemical K.S. ("Zarepta") submits this Sur-Reply Memorandum of Law.

## ARGUMENT

## POINT I

### PLAINTIFF HAS THE BURDEN TO SHOW THAT THE ATTACHMENT WAS PROPERLY OBTAINED

On this motion to vacate an attachment, the plaintiff Stolthaven Houston Inc. ("Stolthaven") has the burden of proving that it has a valid *prima* facie maritime claim against Zarepta. Supplemental Admiralty Rule-E(4)(f); *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 n.5 (2d Cir. 2006). Stolthaven has no claim against Zarepta because the Vessel was being operated by Norfolk under the Bareboat Charter. As is shown in Point III, the Bareboat Charter was a valid bareboat charter under Norwegian law. Moreover, even if U.S. law were applied to the issue of whether the Bareboat Charter was valid, the Bareboat Charter would be valid under U.S. law. Independent of the issue of Zarepta's status under the Bareboat Charter, Stolthaven cannot recover because there is no privity of contract between Zarepta and Stolthaven. *See* Point V. In a last minute attempt to formulate a claim against Zarepta, Stolthaven argues for the first time, on sur-reply, that it has a claim against Zarepta for unseaworthiness. As is shown at Point VII, Stolthaven has no claim against Zarepta for unseaworthiness. Hence, Stolthaven has not carried its burden to prove it has a valid *prima facie* maritime claim. Its attachment, therefore, must fail and the Zarepta funds, wrongly attached, must be released.

## POINT II

## U.S. LAW APPLIES

Zarepta agrees that Stolthaven's claim is governed by U.S. law. Norwegian law applies only to the determination of whether the Bareboat Charter is a valid bareboat charter. *Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 537 (S.D.N.Y. 2007). As both sides agree that U.S. law applies to the consideration of Stolthaven's claim, Zarepta will not respond to Stolthaven's argument that it has a valid *in personam* claim against Zarepta under Norwegian law.

Under U.S. law, most third-party claims cannot be made against a registered owner when it has bareboat chartered its vessel. *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 37 (1960) (Whittaker J., dissenting) (citing *The Barnstable*, 181 U.S. 464 (1901); *The China*, 74 U.S. 33, 70 (1868)) ("If, for example, a vessel under bareboat charter damages another as the result of the negligence of her crew, the vessel is liable *in rem* even though an action *in personam* would not lie against her owner."); *Sampson Madeja v. Olympic Packers*, LLC, 310 F.3d 628, 638 (9th Cir. 2002) (registered owner not liable for a seamens' wage claim when vessel under bareboat charter); *Maritrend, Inc. v. M/V Sebes*, No. 96-3140, 1997 U.S. Dist. LEXIS 23594, *11 (E.D. La. 1997) (registered owner not liable for a stevedore's claim when vessel under bareboat charter).

## POINT III

## UNDER APPLICABLE NORWEGIAN AND U.S. LAW THE BAREBOAT CHARTER IS A TRUE BAREBOAT CHARTER

According to its terms, the Bareboat Charter is to be governed by and construed in accordance with Norwegian law. (Werring Declaration, Ex. A, Rider 56). Therefore, any dispute regarding the validity of the Bareboat Charter must be decided under Norwegian law. *Sonito*

2

*Shipping*, 478 F. Supp. 2d at 537.  Stolthaven has submitted a declaration of Gaute Gjelsten, a Norwegian lawyer.  Mr. Gjelsten was given the Bareboat Charter to review (Gjelsten Declaration ¶ 5.6) and presumably was asked to provide his opinion whether, under Norwegian law, it was a valid bareboat charter.    He chose not to reveal his conclusion, saying only that "the characterization of the contract depends on an assessment of the contract as a whole ...." (Gjelsten Declaration ¶ 11)  In contrast to Mr. Gjelsten's notable silence on the issue, Zarepta submitted the Declaration of Knut Erik Westad, a Norwegian lawyer with many more years of maritime law experience.  (Westad Declaration ¶ 2).  Mr. Westad is clear in his statement:

> ... there is, in my opinion, no doubt that under Norwegian law, the Bareboat Charter is in fact a bareboat charter.

(Westad Declaration ¶ 6).  Stolthaven has not rebutted this assertion.

Furthermore, as Zarepta argued in its Reply Memorandum at 5 to 6, the Bareboat Charter, in any event, would be considered a valid bareboat charter under U.S. law.  Stolthaven relies on three cases in support of its argument that, under U.S. law, the registered owner's retention of any modicum of control, no matter how passive or benign, disqualifies a charter from being considered a true bareboat charter.  None of those cases support Stolthaven's argument.  Indeed, U.S. courts have disregarded a modest retention of control in holding a contested charter to be a true bareboat charter.  In the *U.S. v. Shea*, 152 U.S. 178 (1894), the Court considered a number of contrasting clauses in the charter and, in finding the charter to be a true bareboat charter, stated:

> Any possible inference from one clause may be set off against a different inference from the other, but neither of them destroys the significance of the operative words of transfer, . . .

*Id.* at 191.

In *Tidewater Barges Lines Inc. v. The Port of Lewiston*, 03-CV-1225-ST, 2005 U.S. Dist. LEXIS 41947, 2006 AMC 542 (D.C. Ore. Oct. 21, 2005), *adopted by, Tidewater Barge Lines,*

*Inc. v. CP Ships, Ltd.,* 2005 U.S. Dist. LEXIS 41945 (D. Or., Nov. 22, 2005), a claimant sought to hold a shipowner responsible for the vessel's unseaworthiness, even though the shipowner had bareboat chartered the vessel. In arguing that the charter was not a true bareboat charter, the claimant pointed to provisions in the bareboat charter which prohibited a change in the vessel's use, restricted the cargoes that vessel could carry and limited geographically the vessel's operation. *Id.* at *32. The Court acknowledged that those provisions may have provided to the ship owner "some modicum of control." *Id.* at *33. Nonetheless, the Court found that the charterer "possessed and had been solely responsible for the operation, maintenance and control of the [vessel]. . . .," the telltale signs of a bareboat charter. *See id.*

There is a great divide between a bareboat charter which is a true lease under which a charterer is given a property interest in the vessel and a time charter which is nothing more than a services contract with no grant of a property interest. *See* Mark Davis, *Bareboat Charters* §§1.9, 1.13 (2d ed. 2005). There is no continuum. Those are two different species. Modest passive restrictions, intended only to protect the shipowner's and mortgagee's post re-delivery interests, which leave unaffected the charterer's possession, command and navigation of the vessel, do not divest a bareboat charter of its true nature. *Id.*

## POINT IV

### ZAREPTA DID NOT WAIVE THE APPLICABILITY OF FOREIGN LAW

In Sur-Reply, Stolthaven complains that Zarepta raised the issue of Norwegian law for the first time in its reply papers. Zarepta, however, responded promptly when it became aware that Stolthaven was claiming the position that the Bareboat Charter was invalid under U.S. law. Although Stolthaven's counsel received a copy of the Bareboat Charter on June 5, 2008, Stolthaven did not inform Zarepta that it challenged the Bareboat Charter's validity until it opposed the motion

4

to vacate the attachment.  Once Stolthaven made that argument, Zarepta properly responded as to the appropriate law to be applied.

As one court has explained, and Stolthaven has accepted, "[t]he purpose of the rule is 'to avoid unfair surprise either to the opposing party or to the court." *Local 875 I.B.T. Pension Fund v. Pollack,* 992 F. Supp. 545, 559 (E.D.N.Y. 1998) (quoting A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2443 at 640 (1995)).  Stolthaven has been on notice of the Norwegian law provision since June 5, 2008.  (Exhibit D to Honan Affidavit).  There is no surprise and Zarepta raised the issue of foreign law at its first opportunity.  Stolthaven's counsel is well aware that disputes relating to a charter party are governed by its choice of law clause, having appeared for plaintiff in *Sonito Shipping,* 478 F. Supp. 2d at 532.  Furthermore, the Court has allowed Stolthaven's submission of a sur-reply and, thus, Stolthaven has had an opportunity to respond to Zarepta's argument regarding the construction of the Bareboat Charter under Norwegian law.

## POINT V

### STOLTHAVEN HAS NO VALID PRIMA *FACIE* MARITIME CLAIM UNDER *EX PARTE EASTON*

At oral argument, Stolthaven, for the first time, relied upon *Ex Parte Easton*, 95 U.S. 68 (1877), in support of its argument that it has an enforceable wharfage claim against Zarepta. *Easton* is cited by commentators for the proposition that a claim for wharfage is a maritime claim.  *See* Grant Gilmore & Charles L. Black Jr., *The Law of Admiralty* 22 n. 69 (2 ed. 1975). Stolthaven seeks to broaden the case's scope and relies, in particular, on the following passage:

> . . . it is clear that a contract for the use of a wharf by the master or owner of a ship . . . is a maritime contract . . . ; made exclusively for the benefit of the ship . . . ., a maritime lien . . . arises in favor of the proprietor of the wharf against the vessel . . . , and that the same may be enforced by a proceeding *in rem* against the vessel, or by a suit *in personam* against the owner.

*Easton,* 95 U.S. at 77.

The Court's holding regarding the *in rem* claim, at least in retrospect, is unremarkable. The Court's *dictum* regarding the *in personam* claim (the claimant in *Easton* sought to enforce an *in rem* claim only) is nothing more than a truism. If an owner or a ship's master, on the owner's behalf, enters into a contract with a wharf owner, the owner is responsible for payment of its services. In *Easton*, no charter was involved, so that *Easton*, for the purpose of the present case, is irrelevant. Stolthaven has provided no citations – not one – which supports its position that, notwithstanding that there was a contract between Stolthaven and Norfolk, Zarepta should be held responsible, *in personam*, for the wharfage charges.

As Zarepta argued in its moving memorandum at 7, "Stolthaven does not have a contract with Zarepta. There is no relationship at all between Zarepta and Stolthaven." Under U.S. law, Zarepta is not bound by any contract between Stolthaven and Norfolk or between Stolthaven and Hiltveit, either express or implied. In maritime law, the absence of privity, just as in the common law, precludes a finding of liability in contract. For example, the shipowner cannot be held responsible for the-party cargo damage when caused by the vessel when it was the charterer who issued the bill of lading to the third party:

> The shipowner is not personally liable on bills of lading issued by a charterer and not signed by the master, . . . ., where the owner's name does not appear thereon. [citation omitted]. Even a bill of lading signed by the charterer "for the master" is a charterer's bill of lading on which the owner will not be personally liable, *unless* the master or owner actually authorized the signature by the charterer, or clothed the charterer with the apparent authority to bind the owner to the bill of lading as a contracting party.

Michael Wilford, Terence Coghlin & John D. Kimball, *Time Charters* § 21.84 (5th ed. 2003).

Thus, in *Demsey & Assocs v. S.S. Sea Star*, 461 F.2d 1009, 1015 (2d Cir. 1972), the ship owner

was found not liable *in personam* under the charterer's bills of lading. *Id.* at 1015 (citations

omitted).

Similarly, an owner cannot be held liable for bunkers or other necessaries ordered by a

charterer. *Belcher Co. of Alabama v. M/V Maratha Mariner*, 724 F.2d 1161, 1163 (5th Cir.

1984). As the Fifth Circuit explained, in discussing a vessel under charter:

> The owner of the vessel is not itself liable for payment, however, unless it has
> entered into the contract for the supply of necessaries. It has no personal
> obligation even though a lien attaches to its vessel.

*Id.*

Nor does Stolthaven have a claim for an implied contract with Zarepta under a claim for

unjust enrichment. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905-06 (2d Cir. 1997). The

overwhelming weight of authorities considering this kind of claim require "some type of direct

dealing or actual substantive relationship with a defendant." *Redtail Leasing, Inc. v. Bellezza*,

No. 95 Civ. 5191, 1997 WL 603496, *8 (S.D.N.Y. Sept. 30, 1997); *Motel 6 Sec. Litigation*, No.

93 Civ. 2183, 93 Civ. 2866, 1997 WL 154011, *7 (S.D.N.Y. Apr. 2, 1997).

## POINT VI

### STOLTHAVEN'S UNSUPPORTED ALLEGATIONS
### REGARDING ZAREPTA'S INDEPENDENCE ARE WITHOUT MERIT

In its Sur-Reply Memorandum, Stolthaven alleges that Zarepta is hiding behind a "paper

limited partnership in the Marshall Islands." Stolthaven does not explain that the Marshall Islands

company is Norfolk not Zarepta. Norfolk and Zarepta entered into a bareboat charter for the Vessel,

dated May 25, 2004 (Exhibit A to Werring Declaration). Zarepta and Norfolk are separate entities.

Although Stolthaven has made inferences, it has made no actual allegation or shown any evidence to

the contrary.  As Zarepta's Chairman stated, "Zarepta has no corporate relationship with Norfolk, the Vessel's bareboat charterer nor with Hiltveit." (Werring Declaration ¶ 8).

Stolthaven argues that neither the General Management Agreement nor the Agreement for Ship Management is signed by both parties.  However, Zarepta is not a party to those agreements. Stolthaven's inferences regarding the signatories to those agreements are immaterial to the claim against Zarepta.  Stolthaven has pointed to no evidence to suggest that the Bareboat Charter is anything other than what it was, an arm's length transaction between Norfolk and Zarepta.

## POINT VII

### STOLTHAVEN HAS NO VALID *PRIMA FACIE* ADMIRALTY CLAIM AGAINST ZAREPTA FOR UNSEAWORTHINESS

Stolthaven argues, for the first time in its sur-reply, that it has a claim against Zarepta for unseaworthiness.  Contrary to Stolthaven's argument, the terms of the Bareboat Charter make clear that the Owner has no continuing duty to maintain the vessel's seaworthiness.  The delivery of the Vessel constituted

> a full performance by the Owner of all the Owners' obligations under *Clause 2* and thereafter the Charterers shall not be entitled to make or assert any claim against the Owners on account of any conditions, representations or warranties express or implied with respect to the Vessel.

(Werring Declaration Ex. A, ¶ 2, l. 15-20).  From that time, it was Norfolk's responsibility to "man, victual, navigate, operate, supply, fuel and repair the Vessel." (*Id.* at ¶9(b), l. 147).  Thus, under the Bareboat Charter in the present case, the Owner warranted seaworthiness only at the time of delivery of the vessel, which took place over four years ago, on May 28, 2004. (Werring Declaration ¶ 4).

In arguing for its unseaworthiness claim, Stolthaven relies on cases that discuss an owner's duty under a standard time charter.  None is relevant.  In *Nichimen*, the Court referred to

the owner's continued responsibility for the vessel's seaworthiness, and that the Captain acted on behalf of the owner "who runs and mans the ship." *Nichimen Co., Inc. v. Seaboard Shipping Co.*, 462 F.2d 319, 331-32 (2d Cir. 1972). Under the Bareboat Charter, "[t]he Master, officers and crew of the Vessel shall be the servants of the Charterers for all purposes whatsoever, even if for any reason appointed by the Owners." (Werring Declaration Ex. A, ¶9, l. 151-43). Furthermore, in *Rose*, the Court referred to a "traditional time charter agreement" in which the charterer directed commercial activities and the owner remained responsible for the vessel's seaworthiness. *Rose v. Chaplin Marine Transport, Inc.*, 895 F. Supp. 856, 861 (S.D. W. Va. 1995) (*citing Moore v. Philips Petroleum Co.*, 912 F.2d 789, 792 (5th Cir. 1990)). Here, there is not a "traditional time charter" but a bareboat charter in which the bareboat charterer had full responsibility for the crew, the Vessel's seaworthiness and commercial activities. Those clauses reflect the parties' agreement and cannot be excised from the contract.

Stolthaven had no contract with Zarepta. As the warranty of seaworthiness is a contractual term, whether express or implied, the absence of a contract precludes the imposition of a warranty of seaworthiness.

> An owner, who has demised his ship, is not indeed liable to any one but the demisee under his warranty of seaworthiness for any loss or injury suffered during the demise. Such liabilities sound in contract and he has not made any contract with any one else.

*Canella v. Lykes Bros.*, 174 F.2d 794, 796 (2d Cir), *cert denied*, 338 U.S. 859 (1949); *Dant & Russell, Inc. v. Dillengham Tug & Barge Corp.*, 877 F.2d 1404, 1407 (9th Cir. 1989).

If there were to have been a tort, it would have to be one of negligence. If Stolthaven claims itself to be a victim of Zarepta's negligence, Stolthaven must show that Zarepta, which had no operational control of the vessel, was negligent and that it owed a duty of care to Stolthaven. Such a showing cannot be made and, in any event, has not been pled.

9

Even if Stolthaven could overcome all those defects, Stolthaven's tort claim would be barred by the maritime rule enunciated most famously in *Robins Drydock & Repair Co. v. Flint*, 275 U.S. 303 (1927). If Stolthaven had pled a claim for negligence, it would be claiming only economic damages from Zarepta. As explained by the commentator Thomas Schoenbaum, "under *Robins* economic losses are compensable only where the plaintiff has suffered physical damage to a proprietary interest." Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 9-12, p. 598 (4th ed. 2004). Stolthaven has alleged no physical damage. Hence, any claim by Stolthaven for a maritime tort, even if pled, would be fatally defective.

## CONCLUSION

As Stolthaven has failed to carry its burden of proving that it has a valid *prima facie* maritime claim, Defendant respectfully requests that the Court grant Defendant's motion to vacate the Attachment Order, along with such other and further relief as this Court deems fair and just.

Dated: New York, New York
      June 30, 2008

HOLLAND & KNIGHT LLP


By: _____
William J. Honan
Michael J. Frevola
Francesca Morris
195 Broadway
New York, New York 10007-3189
(212) 513-3200

*Attorneys for Defendant*
*Zarepta Chemical KS*

# 5426856_v3

10